RANDALL H. WHITE

*v.*

MILO H. WAGAR.

*Opinion filed April 17, 1900.*

1. JUSTICES OF THE PEACE—*justice has no powers not conferred by statute.* A justice of the peace can exercise no powers except those conferred by the statute, and whenever he assumes jurisdiction in a case not provided for by statute his acts are null and void.

2. FORGERY—*labels and trade-marks are not the subject of forgery.* The simulation of trade-marks, labels, names or signatures used by a merchant or manufacturer in and about the sale or advertisement of his goods is not forgery, but, under sections 115 and 116 of division 1 of the Criminal Code, is a misdemeanor.

3. SEARCH WARRANTS—*justice of peace cannot issue search warrant for forged labels or trade-marks.* Paragraph 1 of section 2 of division 8 of the Criminal Code, authorizing a justice of the peace to issue a search warrant for counterfeit or spurious coin, forged bank notes "and other forged instruments," does not authorize a search warrant for forged labels and trade-marks. (*Langdon* v. *People*, 133 Ill. 382, distinguished.)

4. SAME—*when search warrant is illegal and void.* A search warrant is void which fails to command the officer to bring with him the person in whose possession the property is found; nor is this defect cured by the voluntary appearance of such party.

5. CERTIORARI—*when certiorari will lie.* A common law writ of *certiorari* will lie where the inferior tribunal has exceeded its jurisdiction as well as where it has proceeded illegally and no appeal or writ of error is allowed.

*White* v. *Wagar*, 83 Ill. App. 592, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

This is an appeal from a judgment of the Appellate Court affirming a judgment of the circuit court of Cook county, wherein the circuit court, upon the petition of Milo H. Wagar, the appellee, for a writ of *certiorari* as at common law, entered a judgment that "the record and

proceedings brought before it in the case of the People of the State of Illinois against No. 265 Fifth Avenue, Chicago, Cook county, Illinois, before Randall H. White, a justice of the peace in and for the town of South Chicago, in the county of Cook and State of Illinois, are manifestly illegal, erroneous and void in law and wholly without effect, and that such proceedings are hereby vacated, annulled and set aside." Randall H. White, the appellant, was the justice of the peace before whom the judgment was rendered which is called in question by the petition for *certiorari.*

The complaint made before the justice, as shown by the petition, was substantially as follows: "William M. Copeland, being duly sworn, upon his oath deposes and says that certain forged and counterfeit trade-marks, labels, bottles, caps, corks, cases, boxes, dies, stamps, stencils, plates, names and signatures, purporting to be the true and genuine trade-marks, labels, bottles, caps, corks, cases, boxes, dies, stamps, stencils, plates, names and signatures of James E. Pepper & Co., of Lexington, Kentucky; the same as to J. A. Gilka, of the city of Berlin, Germany; also Dr. J. G. B. Siegert & Hijos, of Port of Spain, Island of Trinidad, British West Indies; John DeKuyper & Son, Rotterdam, Holland; Martell & Co., of Cognac, France; Benedictine Co., of Fecamp, France; W. A. Gaines & Co., of Frankfort, Kentucky; Coates & Co., Plymouth, England; Booth & Co., London, England; Martini & Rossi, Italy; Joseph F. Boll, of Isere, France; John Jameson & Son, (Limited,) Dublin, Ireland; G. H. Mumm & Co., Reims, France; Edward Pernod, Couvet, Switzerland; H. Underberg-Albrecht, Rheinberg, Germany; Field, Son & Co., of London, England; Louis Roederer, of Reims, France; Paris, Allen & Co., of New York City; Axel Bagge & Co., of Goteborg, Sweden; Jorgen B. Lysholm, of Throndhjem, Norway; John Ramsay, of Port Ellen, Islay, Scotland; L. Garnier, of France; E. H. Taylor, Jr. & Co., of Frankfort, Kentucky; Hiram Walker &

Sons, (Limited,) of Canada; E. & J. Burke, (Limited,) of Dublin, Ireland; Cook, Bernheimer & Co. of New York City; also certain tools, machinery and printing presses, cuts, type and other materials used for making the said forged and counterfeit trade-marks, labels, bottles, caps, corks, cases, boxes, dies, stamps, stencils, plates, names and signatures. Which said forged and counterfeit trade-marks, labels, bottles, caps, corks, cases, boxes, dies, stamps, stencils, plates, names and signatures, and the tools, machinery, printing presses, cuts, type and other materials for making the same, were forged and counterfeited, and used for the unlawful purpose of cheating and defrauding some person, body corporate, by some person or persons unknown to this affiant. And he verily believes that a large number of said forged and counterfeit trade-marks, labels, bottles, caps, corks, cases, boxes, dies, stamps, stencils, plates, names and signatures, and the tools, machinery, printing presses, type, cuts and other materials for making the same, are now concealed in and about the building and premises of No. 265 Fifth avenue, and the basement connected therewith, all in the city of Chicago, county of Cook and State of Illinois, and that the following are some of the reasons for such belief: First, that one of the agents of said affiant reports to him that he, said agent, saw shipped away from said premises on the 18th day of January, 1898, about twenty cases of counterfeit and bogus Martini & Rossi vermouth, having stamped thereon forged marks and signatures purporting to be the true and genuine marks and signatures of Martini & Rossi; and also reports that he saw on said date a large number of forged and counterfeit cases, purporting to be the true and genuine cases of James Hennessy & Co., stored on said premises."

Upon the complaint so made the justice issued a warrant, which, among other things, contained the following: "We therefore command you, with necessary and proper assistance, to enter in the daytime the said premises and

there diligently search for said goods and chattels, and
if the same or any part thereof be found on such search,
that you bring the goods and chattels so found before
the said justice, or, in case of his absence, before some
other justice of the peace in said Cook county, to be dis-
posed of according to law." The warrant was delivered
to William Breen, a constable, and by him returned on
January 20, 1898, with the following endorsement thereon:

"Executed the within writ by searching the within men-
tioned premises between sunrise and sunset of the 19th day of
January, 1898, and taking therefrom articles found in the pos-
session of M. H. Wagar, to-wit: Fifty-two bottles alleged Hen-
nessy brandy having forged and counterfeit labels attached;
twenty-three bottles alleged chartreuse having forged and
counterfeit labels attached; one case alleged Angostura Bit-
ters, pint bottles, as described in complaint; one case alleged
Angostura Bitters, quart bottles, having forged and counter-
feit labels, as shown in the complaint; one quart bottle alleged
Angostura Bitters having forged and counterfeit labels at-
tached, as described in the complaint.

"Dated this 20th day of January, 1898.

"Costs and expenses, eight men and team, $20.

                              WM. BREEN, *Constable.*"

The articles seized, in part, having been brought be-
fore the justice of the peace, a hearing was had, and the
justice adjudged the labels, trade-marks, names and sig-
natures attached to certain of the bottles so seized to be
forged and counterfeit labels, trade-marks, names and
signatures, and directed that said labels, trade-marks,
names and signatures attached to said bottles so pro-
duced be safely kept by said William Breen so long as
necessary, for the purpose of being produced or used
in evidence on any trial, and, as soon as might be af-
terwards, to be burned or otherwise destroyed under the
direction of the said justice of the peace, appellant here-
in; and that as to the other labels, trade-marks, names
and signatures attached to the articles as mentioned in
said constable's return, adjudged that each and all were

forged and counterfeit labels, trade-marks, names and signatures attached to bottles, as alleged and found upon appellee's premises.

RANDALL H. WHITE, *pro se*, and CHARLTON & COPELAND, for appellant:

The office of common law *certiorari* is, in strictness, merely to bring up the record of the proceedings in an inferior court or tribunal to enable the court of review to determine whether the former has proceeded within its jurisdiction, and not to correct mere errors in its proceedings. *People* v. *Betts*, 55 N. Y. 600.

A common law *certiorari* will issue only where there is no other mode of review, by appeal or otherwise. *School Trustees* v. *Shepherd*, 139 Ill. 114; *Wright* v. *Highway Comrs.* 150 id. 138; *Mayor of Harvey* v. *Dean*, 62 Ill. App. 41.

The common law writ of *certiorari* is not grantable of common right, but rests largely in the discretion of the court. *Lees* v. *Drainage Comrs.* 125 Ill. 47.

A writ of *certiorari* will issue only where the court, upon investigation and in the exercise of sound legal discretion, can see that justice requires it. *People* v. *School Trustees*, 42 Ill. App. 650.

The search warrant did not command the officer to bring any person before the justice, but actual notice was given to appellee, and he responded in person and by his attorneys, and appeared in person and by his attorneys pursuant to adjournment, and took the witness stand and produced witnesses in his behalf and in behalf of the things taken, and resisted the prosecution by his sworn testimony and the testimony of his witnesses, made motions in the progress of the hearing and obtained the rulings and judgment of the court thereon. What purpose would have been served to have brought him into court that was not served by his coming as he did? *Tewalt* v. *Irwin*, 164 Ill. 592; *Drainage Comrs.* v. *Griffin*, 134 id. 348; *Houston* v. *Clark*, 112 id. 350; *Baldwin* v. *Murphy*, 82 id. 485;

*Miles* v. *Goodwin,* 35 id. 53; *Scott* v. *People,* 59 Ill. App. 112; *Schofield* v. *Pope,* 104 Ill. 130.

Section 2 of division 8 of our Criminal Code authorizes search warrants to be issued "to search for and seize counterfeit and spurious coin, forged bank notes and other forged instruments, or tools, machinery or materials prepared or provided for making either of them." Forged labels, trade-marks, names and signatures are covered by the words "other forged instruments," used in said section of the Criminal Code. *Langdon* v. *People,* 133 Ill. 382; *Commonwealth* v. *Dana,* 2 Metc. 329; *Glennon* v. *Britton,* 155 Ill. 232.

COLLINS & FLETCHER, for appellee:

A justice of the peace in Illinois is a court of limited jurisdiction, having no common law powers. The statute is the charter of its authority, and whenever it assumes jurisdiction in a case not conferred by the statutes its acts are null and void. Moore's Justice, (3d ed.) p. 18, sec. 36; Haines' Justice, (14th ed.) 24; *Ex parte Bollman,* 4 Cranch, 93; Brown's Jur. sec. 12; *Dillard* v. *Railway Co.* 58 Mo. 74; 1 Cowen's Civil Jur. of Justices of the Peace, (2d ed.) 551; *Bowers* v. *Green,* 1 Scam. 42; *Robinson* v. *Harlan,* id. 237; *Crow* v. *Gilbert,* 54 Ill. App. 137; *Vogel* v. *People,* 37 id. 388; *Stuckey* v. *Churchman,* 2 id. 585; *Stafford* v. *Scroggin,* 43 id. 48; *Evans* v. *Pierce,* 2 Scam. 468; *Cox* v. *Groshong,* 1 Pinney, 311; *Bates* v. *Buckley,* 7 Gilm. 366; *Telegraph Co.* v. *Bank,* 74 Ill. 219.

Justices of the peace have no jurisdiction to issue search warrants save in those cases specifically authorized by statute, as there is no common law jurisdiction in a justice of the peace to issue a search warrant in any case. Moore's Crim. Law, sec. 141; *State* v. *McDonald,* 3 Dev. 471; Cowdery's Justice Treat. sec. 2249; *Robinson* v. *Richardson,* 13 Gray, (Mass.) 455; *State* v. *Mann,* 5 Ired. L. 47; Black's Const. Law, 437-440; 1 Chitty's Crim. Law, (4th Am. ed.) 464 *a;* Cooley's Const. Lim. (6th ed.) 364;

*Entinck* v. *Carrington*, 19 State Tr. 1029; 2 Wilson, 275; Broom's Const. Law, 558; 4 Coke, 176; Dalton's Justice, chap. 169, p. 577; Campbell's Lives of Chief Justices, (Boston, 1873,) 316; *Wilkes* v. *Wood*, 19 State Tr. 1153; Broom's Const. Law, 551.

There is no statute in Illinois authorizing the issuance of a search warrant for bogus or counterfeit labels or trade-marks, or any of the things mentioned in the search warrant in question, or conferring upon a justice of the peace the right to issue a search warrant for such purpose. 2 Bishop on Crim. Law, (8th ed.) sec. 536; *Regina* v. *Smith*, 8 Cox's C. C. 32; *Regina* v. *Closs*, 7 id. 494; *Queen* v. *French*, L. R. 1 Crown Cas. Res. 217; *State* v. *Smith*, 16 Yerg. 151; *Waterman* v. *Weisiger*, 41 Ky. 214; *Commonwealth* v. *Chandler*, Thach. Crim. Cas. 187; 2 Bishop on New Crim. Law, sec. 523; *Foulkes* v. *Commonwealth*, 2 Rob. (Va.) 836.

The search warrant is void because it does not command the officer to bring before the justice the person in whose possession the goods were found. Hurd's Stat. 1898, chap. 32, div. 8, sec. 3; Cooley's Const. Lim. (6th ed). 369; *State* v. *Leach*, 38 Me. 433; Bishop on New Crim. Proc. sec. 243; *People* v. *Holcomb*, 3 Park. Cr. 669; *State* v. *Whalen*, 27 Atl. Rep. 349; *Railway Co.* v. *Small*, 27 id. 349; Waples on Proc. in Rem, sec. 43; *Gould* v. *Jacobson*, 58 Mich. 288.

Mr. JUSTICE CRAIG delivered the opinion of the court:

A justice of the peace in this State is a court of limited jurisdiction. It has and can exercise no powers except those conferred by the statute, and whenever it assumes jurisdiction in a case not conferred by the statute, its acts are null and void. (Moore's Justice, p. 18, sec. 36; *Robinson* v. *Harlan*, 1 Scam. 237; *Bowers* v. *Green*, 1 id. 42; *Evans* v. *Pierce*, 2 id. 468.) It is also well settled that a justice of the peace has no jurisdiction to issue a search warrant except in cases provided by law. (Moore on Crim. Law, sec. 141; Cooley's Const. Lim.—6th ed.—364.) It therefore becomes important to determine what power

has been conferred upon justices of the peace to issue search warrants.

The authority to issue a search warrant in this State will be found in division 8 of chapter 38 of the Criminal Code, section 1 of which provides that a warrant may issue for stolen or embezzled goods. Section 2 provides that any judge or justice may, on like complaint made on oath, issue search warrants, when satisfied that there is a reasonable cause, in four instances: (1) "To search for and seize counterfeit or spurious coin, forged bank notes and other forged instruments, or tools, machinery or materials prepared or provided for making either of them;" (2) obscene books; (3) lottery tickets, etc.; (4) gaming apparatus.

The appellant, as we understand the argument, relies upon the following clause of the statute: "To search for and seize counterfeit or spurious coin, forged bank notes and other forged instruments, or tools, machinery or materials prepared or provided for making either of them," as conferring the power to issue the search warrant in question. The contention is that forged and counterfeit trade-marks, labels, caps, corks, cases, bottles, boxes, dies, stamps, stencils, plates, names and signatures, together with tools, machinery, printing presses, type, cuts and other materials for making the same, are embraced within the meaning of the clause "other forged instruments," and it is insisted that the words "other forged instruments" are sufficiently comprehensive to include such articles. If, however, labels and trade-marks are not properly embraced within the subject of forgery, then they will not fall within the designation of forged instruments.

The weight of authority seems to be that labels and trade-marks are not the subject of forgery at common law. In Bishop on Criminal Law (vol. 2, 8th ed. sec. 536,) the author says: "In England it was the business of one Borwick to put up for the market, enclosed in printed

wrappers, two kinds of powders, called, respectively, 'Borwick's Baking Powders' and 'Borwick's Egg Powders.' Another printed wrappers of his own, imitating these, and put in them his own powders, selling them as Borwick's. For this he was indicted as for forgery, but the judges deemed that though he was probably criminally liable in another form, what he did came short of this offense. And plainly not so. In words employed by the learned judges, the genuine label put by Borwick upon his powders could not be deemed a writing of legal validity, however useful it was to him as an advertisement or a trade-mark."

*Rex* v. *Smith*, 8 Cox's C. C. 32, is a leading case on the question. In the decision of the case, Pollock, C. B., said: "The defendant may have been guilty of obtaining money under false pretenses; of that there can be no doubt. But the real offense here was the issuing of a false wrapper and inclosing false stuff within it. The issuing of this wrapper without the stuff therein would be no offense. In the printing of these wrappers there is no offense. The real offense is the issuing of them with the fraudulent matter in them. * * * They are merely wrappers, and in their present shape I doubt whether they are anything like a document or instrument which is the subject of forgery at common law. To say that they belong to that class of instruments seems to me to be confounding things which are essentially different. It might as well be said that if one tradesman used brown paper for wrappers of the same description as another tradesman he could be accused of forging the brown paper." Justice Willes said: "This is not one of the different kinds of instruments which may be the subject of forgery. It is not made the subject of forgery simply by reason of the assertion of that which is false. In cases like the present the remedy is well known. The prosecutor may, if he pleases, file a bill in equity to restrain the defendant from using the wrapper, and he

may also bring an action at law for damages, or he may indict him for obtaining money under false pretenses, but to convert this into the offense of forgery would be to strain the rule of law."

As establishing a contrary doctrine we have been referred to 8 Am. & Eng. Ency. of Law, (478,) where the author says: "The false writing of any instrument calculated to deceive, and which, if genuine, might subject the [person signing it to damages, is forgery, such as * * * trade-marks or labels, where it could be made the basis of an action for deceit or warranty against the alleged issuer." In support of the doctrine announced *Rex* v. *Smith, supra,* is cited, but, as has been seen, that case lays down a different rule. Wharton on Criminal Law (10th ed. sec. 690,) is also cited, where the author in substance says that when a trade-mark or label can be made a basis for a suit against the alleged issuer in an action for deceit or warranty, then to falsely appropriate such trade-mark or label is forgery. But here, whether the trade-marks or labels are of the character named by the author, so as to bring them within the rule indicated by him, does not appear from the proceedings before the justice. As we understand it, forgery, at common law, is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or a foundation of legal liability. (2 Bishop on Crim. Law, sec. 523.) The trade-marks and labels in question do not, as we understand it, fall within the definition indicated.

But it is argued that the articles mentioned in the complaint upon which the search warrant was issued, may be and are included within the words of the statute "other forged instruments," and hence if the warrant is not authorized at common law it is by statute. In *Shirk* v. *People,* 121 Ill. 61, following a well established rule of the construction of statutes, it was held that under a statute making it criminal to make or pass a fictitious

bill, note or check, or other instrument in writing for the payment of money, the words "other instruments in writing" will only include such instruments as are of the same class or kind as those enumerated, such as money, bonds, due bills, and other instruments in writing containing an absolute, unconditional promise or obligation to pay a sum of money or personal property. The same doctrine was reiterated in the late case of *Gundling* v. *City of Chicago*, 176 Ill. 340. The same rule was declared in *Cecil* v. *Green*, 161 Ill. 265, and *Wilson* v. *Sanitary District*, 133 id. 443. See, also, *Sandiman* v. *Beach*, 7 B. & C. 99.

*Langdon* v. *People*, 133 Ill. 382, has been cited as an authority sustaining appellant's position. There is, however, nothing in that case in conflict with the authorities above cited. There Langdon was indicted for forging the signature of a county judge, under section 114 of division 1 of the Criminal Code, which provides that "every person who shall  *  *  *  forge or counterfeit the signature of any public officer  *  *  *  shall be imprisoned in the penitentiary," etc., and it was held that the words "other forged instruments" were broad enough to cover a forged certificate of a county judge. But there is a wide difference between an instrument containing the forged signature of a public officer, and trade-marks and labels. A person found guilty of forging the former, under section 114 of division 1 of the Criminal Code, shall be imprisoned in the penitentiary not less than one year nor more than twenty years, but the falsification of the latter articles, under sections 115 and 116, is not forgery but a mere misdemeanor, for which a fine not exceeding $200 may be imposed.

We find no provision of the Criminal Code that the simulation of trade-marks and labels or names and signatures is forgery. They are not of the same class or kind as counterfeit or spurious coin and forged bank notes, and hence they cannot be regarded as forged instruments, within the meaning of the statute. In the

*Langdon case* the public document had been seized and taken from the possession of the defendant under a search warrant, and the vital question was whether it should be admitted in evidence, and in the decision of the case we held that although papers may be illegally taken from the possession of a party against whom they are offered, it is no objection to their admissibility if they are pertinent to the issue. The court will not take notice of how they were obtained. If, therefore, the statute did not authorize a search warrant for bogus trade-marks, labels, names and signatures, as we are satisfied it did not, the justice of the peace had no jurisdiction to issue a search warrant, and his action was void.

There is another fatal defect in the proceeding. The search warrant issued by the justice directed the officer to diligently search for the goods and chattels, and if the same or any part thereof be found, to bring the same before the justice of the peace, but the warrant nowhere contains a direction that he shall also bring with him the person in whose possession the goods are found. Section 3 of division 8 of the Criminal Code (Hurd's Stat. 1897,) expressly provides that the warrant shall direct the officer "to bring such stolen property or other things, when found, and the person in whose possession they are found, to the judge or justice of the peace who issued the warrant." In Bishop on New Criminal Procedure (sec. 243) the rule is laid down that a search warrant must contain every statutory requirement. In Cooley's Constitutional Limitations (6th ed. 369,) it is said: "The warrant must also command that the goods or other articles to be searched for, if found, together with the party in whose custody they are found, be brought before the magistrate, to the end that upon further examination into the facts the goods, and the party in whose custody they were, may be disposed of according to law." In *State v. Leach,* 38 Me. 433, under a statute similar to ours, the Supreme Court of that State held that where

the warrant failed to require the officer to bring before the justice the person in possession of the goods seized, the proceeding was illegal and void. The fact that the person in possession of the articles did appear will not cure the difficulty. In a proceeding of this character, before the premises of the citizen may be invaded and searched, a strict observance of the requirements of the statute must appear from the proceeding itself, otherwise the proceeding will be void. *State* v. *Whalen*, 27 Atl. Rep. (Me.) 349.

It is, however, claimed in the argument that appellee had the right to appeal from the judgment of the justice, and as the right of appeal existed the writ of *certiorari* cannot issue. As no judgment was rendered against appellee his right to appeal might well be doubted. But we shall not stop to consider that question, as this court has held in numerous cases that the common law writ of *certiorari* may be awarded to all inferior tribunals and jurisdictions where it appears that they have exceeded the limits of their jurisdiction, or in cases where they have proceeded illegally and no appeal is allowed or other mode provided for reviewing their proceedings. (*People* v. *Wilkinson*, 13 Ill. 660; *Doolittle* v. *Galena and Chicago Union Railroad Co.* 14 id. 381; *Smith* v. *Highway Comrs.* 150 id. 385; *Hyslop* v. *Finch*, 99 id. 171.) In the last case named it is said (p. 184): "There are two classes of cases in which, according to the previous decisions of this court, a common law *certiorari* will lie: First, whenever it is shown that the inferior court or jurisdiction has exceeded its jurisdiction; second, whenever it is shown that the inferior court or jurisdiction has proceeded illegally and no appeal or writ of error will lie."

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*