(111 So. 767)

### CRAVEN v. STATE. (8 Div. 554.)

(Court of Appeals of Alabama. March 22, 1927.)

Horace C. Wilkinson and J. R. McElroy, both of Birmingham, for appellant.

by assignments 1 and 2 appellant insists, and elaborately argues, that the court erred in overruling the motion of defendant to arrest the judgment in this cause and to discharge the defendant after such arrest of judgment had been entered. The motion in arrest of judgment. was predicated upon the ground:

"That an indictment for an assault with intent to murder, in Code form, that is to say, without expressly specifying the mode in which the assault is alleged to have been committed, does not comprehend or include a charge of assault with a weapon, and that the jury having found the defendant guilty of a charge not comprehended in the indictment and thereafter having been discharged, that the defendant had been placed in jeopardy and had been convicted of an offense of which he had not been charged in the indictment, and therefore the court had no right to enter a judgment upon the jury's verdict and that the defendant was entitled to his discharge."

That there is no merit in this insistence is too well settled for discussion. In the first place by express terms of the statute it is provided: When an indictment charges an offense of which there are different degrees, the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto; and the defendant may also be found guilty of any offense which is necessarily included in that with which he is charged, whether it be a felony, or a misdemeanor. Code 1923, § 8697. That an assault with a weapon is included in the charge of an assault with intent to murder has been expressly decided in this state. Jones v. State, 79 Ala. 23; Horn v. State, 98 Ala. 23, 13 So. 329; Curry v. State, 120 Ala. 366, 25 So. 237; Payne v. State, 148 Ala. 609, 42 So. 988; Lovett v. State, 10 Ala. App. 72, 64 So. 643.

Assignments of error 1 to 6, inclusive, have reference to the. above insistence. From what has been said they cannot be sustained, as each of the court's rulings in this connection were in conformity with the law as it exists in this state.

The undisputed evidence in this case disclosed that the defendant, a man nearly 63 years of age, lived in Franklin county, Ala., and had been living in Spruce Pine, in said county, for 27 years. He undertook to prove his general reputation in said county by Judge J. D. Petree, probate judge of said county, which witness testified he had known the defendant about 10 or 15 years. He was then asked the following questions by counsel for defendant: "Do you. know his (defendant's) general reputation?" Also: "Do you know his general reputation in this county?" The court sustained the state's objections to said questions, and in the latter ruling committed reversible error. The defendant made known to the court that he offered to show by this witness that he knew the general reputation of the defendant in the county, and

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

BRICKEN, P. J. This appellant was indicted for the offense of an assault with intent to murder Claude Lawler, the indictment being in Code form. He was convicted by the jury of the offense of an assault with a weapon, and the jury assessed his fine at $500.

Errors are assigned, 90 in number, and

that such reputation was good, etc. In the case of Sullivan v. State, 66 Ala. 48, Chief Justice Stone for the court said:

"The character which affects the question of guilt or credibility, in legal phrase, is almost the synonym of reputation."

That it is always permissible in the trial of a criminal case for the accused to adduce evidence of his general character needs no discussion. In all criminal prosecutions, whether for felony or misdemeanor, the accused may offer evidence of his previous good character, not only where a doubt exists on the other proof, but even to generate a doubt as to his guilt; and this inquiry need not be limited to the community or neighborhood where the defendant lives, but may be extended to any community or society or neighborhood in which he was known or has a well-known or established reputation. The term "community" or "neighborhood" is not susceptible of exact geographical definition, but means in a general way where the person is well known and has established a reputation. The inquiry is not necessarily confined to the domicile or residence of the defendant, but may extend to any community or society in which he has a well-known or established reputation. Marasso v. State, 18 Ala. App. 488, 93 So. 226; Pate v. State, 162 Ala. 32, 70 So. 357; McQueen v. State, 108 Ala. 55, 18 So. 843. We take it that the court in this ruling was laboring under the impression that the evidence sought should be limited to the community where the defendant resided, and thus fell into error. We are of the opinion that where a defendant (or witness) has resided for a number of years in a certain county, is well known therein, and has established a general reputation in said county, an inquiry relative thereto, under a proper predicate, would be permissible. Boswell v. Blackman, 12 Ga. 593.

A. P. Nelson, sheriff of Franklin county, testified:

"I know the general standing of the defendant in that community prior to this shooting scrape. I would say it was good."

On his cross-examination, the solicitor asked the witness:

"Q. Now, don't you know that he has the reputation in Spruce Pine of being quarrelsome and fussy? A. To some extent; yes, sir.

"Q. To a very large extent, doesn't he? A. Well, there are some of them consider him so. He is by one class."

The relevancy of this inquiry was not raised; but on his redirect examination the defendant propounded to this witness the question:

"Q. Who has he got that reputation of being fussy and quarrelsome with? A. Well, he stands well with the best citizenship of Spruce Pine. He associated with the best citizenship and stands well, except with the fussy, quarrelsome folks, and the whisky folks."

Upon motion of the state the court excluded the above answer. In this ruling there was error. There was no objection to the question propounded, and no grounds stated upon the motion to exclude. The answer was responsive to the question. Moreover, it was relevant as in rebuttal of matters brought out by the state on the cross-examination of this witness. A party to a cause upon trial, which includes the state, is not allowed to speculate upon the answer of a witness, and in the absence of proper and timely objection to a question, a motion to exclude a responsive answer will not lie. Furthermore, it is elementary that when a matter has been gone into by one party to a cause, the other side likewise has a right to go into the same matter and to explain away anything, if he can, that may have been there brought out to his detriment.

We would not predicate reversible error upon the ruling of the court complained of in assignment of error 13, wherein the court would not allow the defendant to ask Lawler, the alleged injured party, on his cross-examination, "Have you ever been convicted in the courts of this county for an offense involving moral turpitude?" The statute does provide that a witness may be examined touching his conviction for crime, if the crime involved moral turpitude. Code 1923, §§ 7722, 7723. But the vice of the question here is that it was too general and called for the conclusion or judgment of the witness as to what crimes involved moral turpitude, and this is a question of law not without difficulty in many instances even to the courts of the land. It cannot be doubted that the better practice would be to propound the direct question in instances of this character, naming the alleged offense, so that the court itself could decide or determine if it came within the terms of the statute.

Assignments of errors 14, 15, 16, and 17 are wholly without merit. They refer to rulings of the court in sustaining objection of the state to questions propounded by defendant to Lawler wherein he was asked:

(1) "Have you ever been convicted of using abusive and obscene language?"
(2) "Have you ever been convicted of an assault and battery?"
(3) "Have you ever been convicted of operating a sawmill without a license?"
(4) "Have you ever been convicted of public drunkenness?"

As stated, these inquiries were immaterial and inadmissible upon the trial of this case and the court properly so held.

So, also, the questions propounded to said Lawler as set out in assignments of errors 19 and 20, to wit:

"You begun to have trouble right after you had gotten into that neighborhood, didn't you?"
Also: "And its been getting worse instead of better?"

These questions were improper, and had no place upon this trial.

 The evidence was in sharp dispute as to who was the aggressor in this case and as to who provoked the difficulty. The evidence for the state tended to show that the defendant provoked the difficulty and that he was the aggressor; the evidence for the defendant tended to show that Lawler, the prosecuting witness, was the aggressor and that he provoked the difficulty. Also the evidence for the defendant tended to show the presence of every element of self-defense. Under this state of the evidence, questions were propounded by the defendant, which are made the basis of assignments Nos. 20, 21, and 22, for the purpose of showing ill feeling and hostile acts previous to the difficulty, by the prosecuting witness towards the defendant.

Question to witness Lawler:

"Didn't you tell some of the neighbors around there that you were going to whip him every time he came in your sight?"

Questions to defendant Craven:

(1) "I will ask you if a' month or two before this happened up there, one day if Mr. Lawler waylaid you, or attempted to waylay you, on the road to Sunday school one morning?"

(2) "I will ask you if a week or two before this happened up there, if Mr. Lawler slipped up behind you and knocked you in the head here in Russellville, I mean in Spruce Pine?"

The general rule of law which renders the foregoing questions proper may be thus stated:

"Where there is a claim supported by some evidence of self-defense, or, as it has been well stated, where the proof justifies the giving of a charge on the law of self-defense, defendant may for the purpose of showing his antagonist to have been the aggressor, introduce evidence tending to show that he entertained hostile feelings toward him. Thus he may show that there had been previous difficulties or quarrels between himself and the person assaulted, explaining his own reason for being at the place where the difficulty occurred. So, too, defendant may show that previous to the difficulty his antagonist had been guilty of acts of conduct evincing hostility toward him, or of conduct which would tend to explain his motive in acting as aggressor. Previous specific acts of violence by 'him toward accused and others in his presence, and information to accused of other such acts may be shown. Defendant may show that on former occasions he assaulted or attacked, beat, waylaid, or shot at him." Thornton v. State, 18 Ala. App. 225, 90 So. 66; Gunter v. State, 111 Ala. 23, 20 So. 632, 56 Am. St. Rep. 17.

The court's rulings in this connection were erroneous under the doctrine above stated. The evidence thus sought by the questions above enumerated was clearly competent and went directly to the question as to who was the aggressor in the difficulty complained of.

 The court properly held that the questions as to whether Lawler, the injured party, had been indicted, or whether there had been a prosecution started against him on the same grounds, were immaterial and inadmissible. Therefore assignments 23 and 24 are not sustained.

 The state witnesses Mrs. J. T. Underwood, Mrs. Claude Lawler, and Effie Stutz gave testimony adverse to defendant, and on cross-examination the defendant undertook to show their bias, hostility, and ill will toward him. This the court would not allow, and in so ruling committed reversible error. The proposition is elementary, and without further discussion we cite the cases of Byrd v. State, 17 Ala. App. 301, 84 So. 777, and Motley v. State, 207 Ala. 640, 93 So. 508, 27 A. L. R. 276, as being expressly in point. Thus the numerous assignments of error on this question are sustained.

 Numerous points of decision are presented which relate to the question of what constitutes the curtilage of a dwelling house, and as to whether or not the defendant, at the time of the alleged shooting, was or was not within the curtilage of his dwelling house.

As to the law on the question of the curtilage of a dwelling house, we quote, without elaboration, from the following decisions of the Supreme Court and this court:

"The rule is of universal acceptance that a person assailed is not bound to retreat from his own dwelling to avoid killing his assailant, even though a retreat could be safely made. Brinkley v. State, 89 Ala. 34, 8 So. 22, 18 Am. St. Rep. 87. And this doctrine is applied to the curtilage, or such space as is customarily occupied by the dwelling house and outbuildings appurtenant thereto. Lee v. State, 92 Ala. 15, 9 So. 407, 25 Am. St. Rep. 17; Naugher v. State, 105 Ala. 26, 17 So. 24; Martin v. State, 90 Ala. 602, 8 So. 858, 24 Am. St. Rep. 844; State v. Bennett, 128 Iowa, 713, 105 N. W. 324, 5 Ann. Cas. 997, where the cases are collated; State v. Brooks, 79 S. C. 144, 60 S. E. 518, 17 L. R. A. (N. S.) 483, 128 Am. St. Rep. 836, 15 Ann. Cas. 49. And cases may and do arise in which it can be affirmed as matter of law that a given house, structure, or place, is or is not within the curtilage. Cook v. State, 83 Ala. 62, 3 So. 849, 3 Am. St. Rep. 688." Mabry v. State, 201 Ala. 512, 78 So. 866; Walker v. State, 205 Ala. 197, 87 So. 836.

"Curtilage usually includes 'the yard, or garden, or field, which is near to, and used in connection with, the dwelling.' Ivey v. State, 61 Ala. 58. And Bish. St. Cr. § 278, quoting from ancient authors, says: 'The privy, barn, stable, cow-houses, dairy-houses, if they are parcel of the messuage, though they are not under the same roof, or adjoining or contiguous to it,' are included within the curtilage. See 2 Bish. Crim. Law (7th Ed.) sec. 104 et seq.; 1 Bish. Crim. Law (4th Ed.) sec. 302, and note 4; 1 Whart. Crim. Law (9th Ed.) sec. 834; 4 Bl. Comm. 274; Overstreet v. State, 46 Ala. 30; Washington v. State, 82 Ala. 31, 2 So. 356. We hold that the testimony in this case was of that indeterminate character which should have been passed on by the jury; and the circuit court did not err in refusing to instruct

them that, as matter of law, the barn was not within the curtilage. Com. v. Barney, 10 Cush. 480; State v. Shaw, 31 Me. 523; People v. Taylor, 2 Mich. 251; People v. Gedney, 10 Hun, 151. Affirmed." Cook v. State, 83 Ala. 62, 3 So. 850, 3 Am. St. Rep. 688.

"Generally speaking, the curtilage is the space of ground adjoining the dwelling house, used in connection therewith in the conduct of family affairs and for carrying on domestic purposes. It need not necessarily be separated from other lands by a fence, nor does the intersection of a divisional fence necessarily affect the relation of a building thus separated from it. * * *" Holland v. State, 11 Ala. App. 164, 65 So. 920.

In the instant case the trial court charged the jury as a matter of law that the evidence did not show that the defendant was in his house or in the curtilage of his dwelling so as to be protected by being in his house, or the curtilage of his dwelling. This was error under the conflicting evidence in this case. The question involved was one of fact under this evidence, and the charge of the court in this connection was clearly invasive of the province of the jury.

Counsel for the state in the argument to the jury made use of the following remarks, and the court overruled defendant's objections thereto and denied the motion to exclude.

(1) "I know that there are some good Masons on this jury and some of you are good Ku Klux Klansmen."

(2) "I was in school with Mr. Lawler (alleged injured party) and played with him as a boy."

As to the latter (quoted) remark, we would not predicate reversible error thereon, though manifestly such remark had no place in the trial of this case and should have been excluded. But the statement by counsel in argument, "I know there are some good Masons on this jury and some of you are good Ku Klux Klansmen," should have been promptly excluded, and the rulings of the court in this connection would of necessity effect a reversal of this case, even if no other injurious error appeared throughout the trial. There was no evidence in the case of there being any good Masons on the jury, nor that some of them were good Ku Klux Klansmen; nor could there have been such evidence. There is no rule of evidence whereby such facts, even if they had existed, would have been admissible on the trial of this case. This argument was highly improper and directly repugnant to the rules of law governing legitimate argument as announced in the following cases. Rowe v. State, 20 Ala. App. 119, 101 So. 91, and cases cited. Hill v. State, 20 Ala. App. 158, 101 So. 159. Cassemus v. State, 16 Ala. App. 61, 75 So. 267.

There are numerous other questions involved upon this appeal. They relate principally to the refusal by the court of certain special charges requested in writing by defendant. A discussion in detail of all these charges would serve no good purpose, for upon another trial these questions may not appear. The principal and controlling questions involved upon this trial have had our consideration and have been hereinabove discussed and decided, and we think will serve as a proper guide for another trial of this case.

For the errors designated, the judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.