303 So.2d 60 (1974)
John Edward JOYNER, Appellant,
v.
STATE of Florida, Appellee.
No. T-269.
District Court of Appeal of Florida, First District.
October 8, 1974.
Rehearing Denied September 19, 1974.
*61 Murray M. Wadsworth and M. Stephen Turner, of Thompson, Wadsworth & Messer, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
BOYER, Judge.
Appellant urges that the trial court erred in denying a motion to suppress certain evidence obtained upon a search of appellant's apartment and automobile pursuant to a search warrant.
The pertinent facts are as follows: A sheriff's detective executed an affidavit to support the issuance of a warrant for the search of appellant's apartment. The affidavit stated that a confidential informer had advised the affiant that appellant "was in possession of marijuana at the above described premises", and that "he could obtain marijuana from [appellant] at the above described premises." The search warrant described the place to be searched as "the apartment on the left or eastward side of said dwelling house and the curtilage * * * thereof." As above stated, the affidavit in support of the warrant alleged information that appellant was in possession of marijuana at certain described premises. The warrant described the specific dwelling and the curtilage thereof. There was no reference in either the affidavit or the warrant to any automobile.
The officers proceeded to the described apartment and executed the warrant. After placing appellant and a cooccupant under arrest for possession of marijuana which was found in the living room of the apartment, the officers expanded their search to an automobile which was parked in a semi-circular driveway which ran the length of the property adjoining the entire multi-dwelling unit. There was no particular parking space designated for any particular apartment. The automobile was locked, but was unlocked and searched by use of a key obtained from appellant. A quantity of marijuana was found in the glove compartment.
The trial judge reasoned that since the keys to the automobile came from inside appellant's apartment and the automobile was parked in a parking area used by the several apartment dwellers, the parking area and the automobile located thereon should be construed as part of the curtilage of the apartment and therefore within the ambit of the warrant. Appellant does not question ownership of the automobile in which the marijuana was discovered.
Appellant first urges that the affidavit in support of the warrant was insufficient to establish probable cause to search beyond the four walls of the described apartment.
*62 There is no question but that a warrant may be no broader than the affidavit which is a prerequisite to its issuance. As was eloquently stated by the late Justice Terrell of the Supreme Court of Florida in Jackson v. State, 1924, 87 Fla. 262, 99 So. 548:
"When searches and seizures are made pursuant to the command of a search warrant, both the search warrant and the prerequisite oath or affirmation required for it must conform strictly to the constitutional and statutory provisions authorizing their issue. This is true, because there is no process known to the law, the execution of which is more distressing to the citizen or that actuates such intense feeling of resentment on account of its humiliating and degrading consequences. As thus enunciated the law is in line with and is no doubt the child of our Anglo-Saxon spirit of liberty which holds every man's house or dwelling as his castle, and which declares that it must not be invaded or subjected to an uninvited search, except by a duly qualified officer, and then only in pursuance of a valid writ commanding it. White v. Wagar, 185 Ill. 195, 57 N.E. 26, 50 L.R.A. 60.
"As was said in Smith v. McDuffee, 72 Or. 276, 284, 142 P. 558, 143 P. 929, such searches are usually made without the consent of the occupant of a domicile, and, the investigation being a proceeding in invitum, the statute authorizing it is to be strictly construed, and no presumptions of regularity are to be invoked in aid of the process under which a proper officer obeying its commands undertakes to justify." (99 So. at page 549)
However, in the case sub judice, as above recited, the affidavit stated that the affiant had been advised by a confidential informer that appellant was in possession of marijuana at the subject premises. The preposition "at" has a broader meaning than "in". Appellant, in his brief, apparently recognizes the distinction because he urges that since a subsequent paragraph of the affidavit recites that the reliable confidential informer stated that he obtained from appellant a quantity of marijuana while inside the described premises the affidavit should be construed restrictively to support the preposition "in" rather than "at". Our examination of the entire affidavit leads us to the conclusion that a reasonable interpretation of the information therein contained supports the assertion that appellant was in possession of marijuana "at" the described premises and that the use of that preposition in an affidavit was sufficient to justify issuance of the search warrant describing not only the apartment of appellant but also the "curtilage thereof."
Appellant urges as authority for reversal Dunnavant v. State, Sup.Ct.Fla. 1950, 46 So.2d 871, wherein the Supreme Court struck down a warrant search because the officers entered the living premises located immediately behind a common wall to a grocery store in front. Our reading of Dunnavant leads to the conclusion that it is not controlling. The Court there dealt with premises rather than curtilage. We have no such issue here.
Having determined that the affidavit was sufficient to support the warrant for a search of the curtilage beyond the four walls of appellant's apartment, we next consider appellant's second and final argument to the effect that the curtilage to appellant's apartment did not include appellant's automobile parked in a parkway or driveway serving the entire multi-unit dwelling. To resolve that point we must determine the meaning of the term "curtilage" as applied to present day circumstances and conditions. In so-doing we feel impelled to emphasize that we are not here concerned with the meaning of "curtilage" insofar as that term might be used to determine the extent of retreat necessary *63 in order to avoid prosecution or conviction for the crimes of assault or murder. (See Nunn v. State, 1924, 19 Ala.App. 619, 99 So. 738)
As was stated in Craven v. State, 1927, 22 Ala.App. 39, 111 So. 767:
"`Curtilage usually includes "the yard, or garden, or field, which is near to, and used in connection with, the dwelling." Ivey v. State, 61 Ala. 58. And Bish.St. Cr. § 278, quoting from ancient authors, says: "The privy, barn, stable, cowhouses, dairy-houses, if they are parcel of the messuage, though they are not under the same roof, or adjoining or contiguous to it," are included within the curtilage. See 2 Bish.Crim.Law (7th Ed.) sec. 104 et seq.; 1 Bish.Crim.Law (4th Ed.) sec. 302, and note 4; 1 Whart. Crim.Law (9th Ed.) sec. 834; 4 Bl. Comm. 274; Overstreet v. State, 46 Ala. 30; Washington v. State, 82 Ala. 31, 2 So. 356 * * *'
* * * * * *
"`Generally speaking, the curtilage is the space of ground adjoining the dwelling house, used in connection therewith in the conduct of family affairs and for carrying on domestic purposes. It need not necessarily be separated from other lands by a fence, nor does the intersection of a divisional fence necessarily affect the relation of a building thus separated from it. * * *' Holland v. State, 11 Ala.App. 164, 65 So. 920." (111 So. at 771)
At common law the curtilage was included with a dwelling, for, as quaintly stated by Blackstone, "For the capital house protects and privileges all its branches and appurtenances, if within the curtilage or homestall." (Blackstone's Commentaries, IV, page 225.)
The Supreme Court of Mississippi, in Collier v. King, 1965, 251 Miss. 607, 170 So.2d 632, defined curtilage
"* * * as such space as it necessary and convenient and is habitually used for family purposes, including an adequate yard and garden and room for necessary outbuildings, and for such decree in reference thereto as the chancellor may deem proper. * * *" (170 So.2d at page 635)
It has been held by this Court that in order for a structure or an enclosed parcel of ground which is separate and apart from one's dwelling to be regarded as within the curtilage it must be customarily used in connection with a person's dwelling. (Phillips v. State, Fla.App. 1st 1965, 177 So.2d 243)
Just as the yard, horse-lot and stables customarily used in connection with a dwelling in bygone days were considered as part of the curtilage so are garages, driveways and parking areas of today. The fact that the present-day crowded world and modern living has forced man to resort to apartment houses and condominiums does not alter the character, as being part of the curtilage, of those nearby and adjacent areas which are customarily used by an individual occupant as an incident to the occupancy of the apartment, though shared in common with others occupying the same complex.
If the driveway parking area was part of the curtilage, and we hold that it was, was the automobile owned by appellant, the key to which was obtained from appellant's apartment during the search thereof, properly the subject of a search pursuant to a warrant authorizing a search of appellant's apartment and the curtilage? We answer in the affirmative.
In Alexander v. State, Fla.App. 1st 1959, 108 So.2d 308, this Court considered a case wherein the warrant described a one-story dwelling at a certain street address in Jacksonville "including the yard and all *64 outhouses on the premises." While the arresting officers were in the process of making their search, an automobile parked in the yard of the premises was inspected. Keys to the vehicle were obtained from inside the defendant's house and with the use of those keys the trunk of the car was opened and found to contain contraband. The opinion in that case was "Per Curiam Affirmed" but Judge Wigginton, in a specially concurring opinion, said:
"The point now under consideration has been directly passed upon in other jurisdictions, and it has been uniformly held that where a search warrant authorizes officers to search a described building, together with the yard or curtilage on which the building is located, parked automobiles or other vehicles found in the yard or within the curtilage are proper subjects of search under the warrant. It has accordingly been held that evidence obtained by the search of automobiles or vehicles under such circumstances is admissible to prove the offense with which the defendant is charged.
"We therefore hold that the evidence obtained from the parked automobile located on the premises described in the search warrant in this case was properly admitted by the trial court, and the motion to quash the search warrant and suppress such evidence was properly denied." (108 So.2d at pages 309 and 310)
Appellant seeks to rely on State v. O'Steen, Fla.App. 1st 1970, 238 So.2d 434. However the holding of that case is not applicable here. There the search of the defendant's premises was without a warrant and no legal excuse was given for including the defendant's automobile in the search.
We now hold that yards, courtyards, driveways and parking areas usually and customarily used in common by occupants of apartment houses, condominiums and other such complexes with other occupants thereof constitute a part of the curtilage of a specifically described apartment or condominium or other living unit thereof and that an automobile located on such common areas and identified by the use of keys obtained from the occupant of such specifically described apartment, condominium or other living unit is a part of that curtilage and subject to search upon the issuance of a valid warrant authorizing a search of the living unit and curtilage thereof.
Accordingly the judgment and sentence appealed are
Affirmed.
SPECTOR, Acting C.J., and McCORD, J., concur.