E. Wilson Purdy Director Metropolitan Dade County Public Safety Department Miami
QUESTION:
Does the term `structure' as defined in s. 810.011(1), F. S., for use in the burglary statute, redefine the common law definition of `curtilage' to include the area surrounding all buildings including those not used as dwellings?
SUMMARY:
The use of the term `curtilage' in the definition of `structure' in s. 810.011(1), F.S., evidences a legislative intent in derogation of the common law and expands its application to any building as opposed to only dwellings.
In an opinion filed February 7, 1978, the District Court of Appeal for the Third District answered your question in the affirmative. Greer v. State, — So.2d — (3 D.C.A. Fla., 1978), Case No. 76-1772. While the court did not discuss the issues at length, until such time as the Legislature or the Florida Supreme Court indicates an answer to the contrary this decision will be dispositive. Although legislation has been introduced for the 1978 session which would correct the problem caused by the enactment of the statutes at issue, I feel compelled to provide a discussion of the issues involved.
During the 1974 session, the Legislature enacted the Florida Criminal Code which provided a definition of the term `structure' which appears in s. 810.011(1), F. S., as follows:
810.11 Definitions. — As used in this chapter:
 (1) `Structure' means any building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof.
The term `structure' appears in s. 810.02(1), F. S., which defines the offense of burglary as follows:
810.02 Burglary. —
 (1) `Burglary' means entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.
The problem caused by these definitions is that at common law the definition of the word `curtilage' restricts it to a certain area surrounding a dwelling rather than any building of any kind. See
Joyner v. State, 303 So.2d 60 (1 D.C.A. Fla., 1974), for a discussion of the definition of the term `curtilage.'
It has long been held that laws in derogation of the common law must be strictly construed. This is especially true of penal statutes in derogation of common law because they too are to be strictly construed. Brooke v. State, 128 So. 814 (Fla. 1930). Any doubt as to the meaning of such statutes is to be resolved in favor of the citizen. Nell v. State, 277 So.2d 1 (Fla. 1973); Gibbs v. Mayo, 81 So.2d 739 (Fla. 1955); Catanese v. State,251 So.2d 572 (4 D.C.A. Fla., 1971). In addition to this, the Legislature in its enactment of the Florida Criminal Code provided as part of its rules of construction of the code that the provisions therein be strictly construed. This stated legislative intent tracks the holdings stated above and evidences a specific intent which should be recognized by the courts.
The Florida Supreme Court in Atlantic Coast Line R. Co. v. State,74 So. 595 (Fla. 1917), held:
 . . . statutes in derogation of common law and penal statutes are not to be construed so strictly as to defeat the obvious intention of the legislature as found in the language actually used according to its true and obvious meaning.
Perhaps a better indication of the continued inclination of the Supreme Court to so find can be found in State v. Egan,287 So.2d 1 (Fla. 1973), wherein the court upheld the provisions of s.775.01, F. S., which provides that the common law in relation to crimes shall be in effect in this state except where there exists a statute on the subject. The court stated that where the legislative intent as evidenced by the statute is plain and unambiguous there is no necessity for any construction or interpretation of it. The court then quoted the following from its decision in Van Pelt v. Hilliard, 78 So. 693 (Fla. 1918), which appears to be on point with respect to the question you raise:
 The Legislature must be understood to mean what it has plainly expressed, and this excludes construction. The legislative intent being plainly expresed, so that the act read by itself or in connection with other statutes pertaining to the same subject is clear, certain, and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms. Cases cannot be included or excluded merely because there is intrinsically no reason against it. Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity. If a legislative enactment violates no constitutional provision or principle, it must be deemed its own sufficient and conclusive evidence of the justice, propriety, and policy of its passage. Courts have then no power to set it aside or evade its operation by forced and unreasonable construction. If it has been passed improvidently the responsibility is with the Legislature and not the courts. Whether the law be expressed in general or limited terms, the Legislature should be held to mean what they have plainly expressed, and consequently no room is left for construction . . . .
 While it would have been preferable for the Legislature to have stated that its definition of `curtilage' was in derogation of the common law, still it is my opinion that the Legislature must be understood to mean what it has plainly expressed. Therefore, until the Greer decision is modified by further legislation or judicial action, your question is answered in the affirmative.
Prepared by: Wallace E. Allbritton, Assistant Attorney General