444 So.2d 508 (1984)
Gordon Bailey ZANER, Appellant,
v.
STATE of Florida, Appellee.
No. AO-263.
District Court of Appeal of Florida, First District.
January 20, 1984.
*509 Henry M. Coxe, III, and Daniel A. Smith, Coxe, Schemer and Smith, Jacksonville, for appellant.
Jim Smith, Atty. Gen., Barbara Ann Butler, Asst. Atty. Gen., Jacksonville, for appellee.
LARRY G. SMITH, Judge.
Appellant was informed against for possession of cocaine, possession of diazepam, possession of controlled substance paraphernalia, and possession of less than twenty grams of cannabis. Following denial of his motion to suppress the evidence, he pled nolo contendere to possession of cocaine and diazepam, reserving his right to appeal the denial of his motion. He challenges the search warrant pursuant to which the evidence against him was seized on three grounds: That the affidavit was insufficient to establish probable cause; that the warrant was "stale" at the time it was executed; and that the warrant did not authorize a search of appellant's person outside of the premises named in the warrant. We affirm.
The affidavit in support of the warrant described a "controlled buy" conducted by the affiant at appellant's residence. The affiant, a police officer with six years of experience in drug related cases, searched a confidential informant to be sure he had no drugs in his possession, furnished him with money, observed him enter and leave appellant's residence, then met him at a predetermined location where the informant turned over a quantity of what proved to be cocaine. The affidavit also recites the informant's description of the sale, and his observation of additional quantities of cocaine within the residence.
The affidavit does not reflect that the confidential informant was searched after he returned from the residence. Appellant contends that the officer's failure to search the confidential informant upon his return from the residence precludes a finding of probable cause. Appellant concedes that under the case law,[1] supervision of a successful controlled buy demonstrates sufficient personal knowledge on the part of an officer to justify the issuance of a search warrant. However, he argues that in the absence of a police search of the informant following the "buy," the issuing magistrate is confronted with no more than a hearsay declaration that the informant bought the controlled substance. He maintains that while this, standing alone, might be sufficient in the case of a Schedule I drug which has no currently approved medical usage (since mere possession would be a crime), it is not sufficient in the case of a Schedule II drug, such as cocaine, which has current, albeit limited, medical uses.[2] Because the affidavit upon which the search warrant was issued is based on hearsay information which fails to satisfy the "two-pronged test" of Aguilar-Spinelli[3], appellant argues, the evidence seized pursuant to that warrant should have been suppressed.
Acceptance of appellant's argument would require this court to apply the "two-pronged test" with the kind of rigid exactitude condemned in Illinois v. Gates.[4] There, the Court said:
[T]he "two-pronged test" directs analysis into two largely independent channels  the informant's "veracity" or "reliability" and his "basis of knowledge." There are persuasive arguments against according these two elements such independent status. Instead, they are better understood as relevant considerations in *510 the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. [citations omitted][5]
The affidavit at bar clearly reflects the "basis of knowledge" of the informant. The affiant observed the informant entering and leaving the residence and was told by the informant that he had seen cocaine, and purchased some, while in the residence. It is clear that if the informant can be believed his information was based upon first hand knowledge.
While the challenged affidavit contains no recital of facts relating directly to the informant's "creditability" or "reliability"[6], we think under the totality of the circumstances set forth in the affidavit, there are sufficient indicia of the informant's reliability.[7]
It has been suggested that to the extent an informant is somehow responsible to the affiant the informant's asserted personal observation may be of some value to a magistrate in assessing the informant's credibility.[8] Bold indeed the informant who while pretending to participate with police in a "controlled buy" steals the police "buy" money, steals cocaine from the target of the investigation, and lies to police about making the purchase and about the presence of additional drugs. In assessing the improbabilities of such conduct the old adage, "actions speak louder than words," is brought to mind. When dealing with probable cause we deal with probabilities.[9]
[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and a constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.[10]
As for appellant's "staleness" argument, the warrant was issued fourteen days after the controlled buy, well within the thirty-day period approved in House v. State, supra, footnote 1, and State v. Cole, 395 So.2d 628 (Fla. 1st DCA 1981). Although there was a nine-day delay in execution of the search warrant, the proffered testimony of Deputy Sheriff Williams that it was not his practice to serve warrants when no one was at home, and that he stayed at the apartment complex about twenty minutes each day waiting for appellant's return satisfactorily negates appellant's contention that there was unreasonable delay in the execution of the warrant. The execution of the warrant, we note, was accomplished well within the thirty-day period.
*511 Appellant's contention that he was improperly searched outside his apartment is without merit. When appellant was accosted by the officer a few feet from the steps which led to his apartment he was carrying a brown nylon bag and a shaving kit which the officer took from him. The officer had been informed by his confidential informant that appellant customarily carried a gun. This information proved to be correct: The brown bag contained a loaded gun, as well as a marijuana pipe and cocaine. The warrant expressly authorized the search of the premises, the yard and curtilage, any vehicles parked thereon, and "any person on said premises reasonably believed to be engaged in or connected with said illegal activity... ." Appellant was clearly within the curtilage at the time of his detention and search by the officer. Joyner v. State, 303 So.2d 60 (Fla. 1st DCA 1974). Further, as appellant forthrightly concedes, officers lawfully present for the purpose of executing a search warrant are justified in stopping and detaining persons on the premises (or the curtilage thereof) and requiring them to accompany the officers into the place to be searched. Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Taking possession of the brown bag and the shaving kit were reasonable actions in view of the officer's concern for his own safety. Moreover, the search of the contents of these containers in appellant's possession, was authorized, in that the directive of the warrant for the search of "any person" reasonably believed to be engaged in or connected with illegal activity on the premises is broad enough to encompass those items carried on or about the person.[11]
We conclude that a commonsense view of the authority conferred by the warrant justified the search of the containers carried by appellant. Cf. Michigan v. Long, ___ U.S. ___, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), extending the scope of a "Terry"[12] type protective search for weapons to the passenger compartment of an automobile if the officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and may gain immediate control of a weapon.
AFFIRMED.
WENTWORTH and JOANOS, JJ., concur.
NOTES
[1] E.g., State v. Gieseke, 328 So.2d 16 (Fla. 1976); House v. State, 323 So.2d 659 (Fla. 1st DCA 1975).
[2] See sections 893.03(1)(b)11, 893.03(2), 893.03(2)(a)4.
[3] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. U.S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
[4] ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
[5] ___ U.S. at ___, 103 S.Ct. at 2329, 76 L.Ed.2d at 545.
[6] Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723.
[7] Compare, State v. Baxter, 356 So.2d 1250 (Fla. 1st DCA 1978). In Baxter there was "no allegation that the controlled substances were illegally obtained, illegally retained nor that the quantity turned over to the officer by the informant was either sold or delivered by appellee or any occupant of said residence to said informant." 356 So.2d at 1251.
[8] U.S. v. Harris, 403 U.S. 573, 576, 91 S.Ct. 2075, 2078, 29 L.Ed.2d 723, 739 (1971) (Justice Harlan, dissenting).
[9] Gates, supra n. 5, ___ U.S. at ___, 103 S.Ct. at 2328-29, 76 L.Ed.2d at 544.
[10] U.S. v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, 689 (1965).
[11] In this connection we observe that "on or about the person" within the statute making it an offense to carry a concealed firearm (Section 790.01, Florida Statutes (1981)) means "physically on the person or readily accessible to him." Ensor v. State, 403 So.2d 349, 354 (Fla. 1981); and in State v. Murray, 382 So.2d 1372 (Fla. 4th DCA 1980), the court reiterated its previous holding that the statute can be violated by one who carries a firearm in a closed briefcase.
[12] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).