89 So.2d 313

**Rosa Lee HOLLOWAY, alias Kirby**

**v.**

**STATE.**

**7 Div. 348.**

Court of Appeals of Alabama.

Feb. 7, 1956.

Rehearing Denied March 6, 1956.

Ben F. Ray, Birmingham, and Guy Sparks, Anniston, for appellant.

John Patterson, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

PRICE, Judge.

The appellant was convicted of the offense of manslaughter in the first degree, under an indictment charging her with murder in the first degree. Her punishment was fixed at five years' imprisonment in the penitentiary.

The evidence is without dispute that deceased, Eugene Kirby, died as the result of a stab wound in the chest, inflicted by defendant.

According to the testimony for the State, appellant was found by the officers sitting on the ground alongside the road with deceased's head in her lap and blood spurting from the wound. The appellant was taken to the City Hall where she made a statement which was reduced to writing and signed by defendant. In the statement, which was introduced in evidence defendant admitted that she stuck deceased one time with a knife after deceased had cursed and threatened her, and had drawn back to hit her. The morning after the killing appellant was taken to the scene where she found a knife which she identified as the one which she used to stab the deceased.

As a witness in her own behalf defendant testified that deceased, with whom she had been living for four or five years came home from work drinking and insisted that

she go out on a tour with him. When she started out she was eating an apple, using a small paring knife to peel it, and she took the apple and the knife with her. They first bought sandwiches at a barbecue stand, went to a "Juke Joint" where they danced; stopped at a house and bought liquor and stayed 25 or 30 minutes while deceased drank most of the liquor. They started walking home, deceased cursing her and arguing all the way. Deceased said he was going to kill her and he hit her on the shoulder with a rock. She stated the blow knocked her down and as she was getting up the deceased came at her fast and she stabbed him once with the knife. She testified that during the time she lived with him deceased, on various occasions while he was drinking, scalded her with hot coffee; tore off her clothes and put her out in the street naked; ran her away from home with a pistol; beat her in the face until she was bloody, and a week and a half before the killing he cut her on the back of the head with a knife.

Some of these acts of violence by deceased against defendant were also testified to by defendant's employer and by some of her neighbors.

The court sustained objections to these questions propounded to defendant on direct examination:

"Q. Now, in your conversations with him from time to time up until the time of his death, I'll ask you whether or not he ever made a statement to you to the effect that he had killed a man and served a term in the penitentiary?"

*  *  *  *  *  *

"Q. Do you know of your own knowledge whether he had ever killed a man and served a term in prison for it?"

*  *  *  *  *  *

"Q. Of course, you had all these other experiences you have talked about, and in addition to that experience, I will ask you if he on more than one occasion—a number of occasions—while you all were living together over a period of about four years, if he hadn't told you that he had spent ten years in the penitentiary for killing a man with a pistol?"

■ Appellant's counsel concedes that this evidence is inadmissible for the purpose of showing deceased's character for violence, turbulence, bloodthirstiness, etc., since under the well established rule evidence as to the character of the deceased must be limited to general reputation and cannot be extended to allow proof of specific acts or declarations of the deceased. Dupree v. State, 33 Ala. 380; Bullington v. State, 13 Ala.App. 61, 69 So. 319; Jackson v. State, 147 Ala. 699, 41 So. 178; Smith v. State, 197 Ala. 193, 72 So. 316; Lambert v. State, 208 Ala. 42, 93 So. 708.

But it is contended in brief that such evidence was admissible on the theory that, "prior acts of extreme and unlawful violence are admissible when offered for the purpose of proving apprehension of bodily harm from the deceased by a defendant charged with the murder of the deceased if the defendant had knowledge of such acts prior to the homicide and has made a prima facie case of self defense, although not so admissible when offered for the purpose of proving the deceased's character." Citing numerous cases from other jurisdictions in support of such contention.

In 26 American Jurisprudence, Section 347, p. 394, the rule is stated: "* * * according to the weight and the trend of modern authority, if, prior to the homicide, the defendant, either through his own observation or through information communicated to him by others, including the deceased himself, knew of other acts of violence of the deceased, he may, in support of his contention that he had reasona-

ble grounds to believe himself in imminent danger from an assault by the deceased, introduce evidence of such prior unlawful acts of violence by the deceased. Such evidence bears on the question whether the defendant reasonably apprehended danger to his life or of great bodily injury."

Many cases from other jurisdictions are discussed in the annotation, 121 A.L.R. 380, on the subject of the admissibility, on prosecution for homicide or assault, of evidence of specific acts of violence by deceased, or the person assaulted, against others than the defendant, on the issue of self defense. These cases hold that, under proper circumstances, evidence of prior specific acts of violence by deceased, of which the defendant has previous knowledge, is sometimes admitted to show, or tend to show, who was the aggressor and what were the reasonable apprehensions of the defendant for his life and safety.

But the courts of our State have not yet gone as far in applying this rule, in instances such as we have here, as counsel would have us go.

In Craven v. State, 22 Ala.App. 39, 111 So. 767, 771, the court quoted with approval this general rule:

"'Where there is a claim supported by some evidence of self-defense, or, as it has been well stated, where the proof justifies the giving of a charge on the law of self-defense, defendant may for the purpose of showing his antagonist to have been the aggressor, introduce evidence tending to show that he entertained hostile feelings toward him. Thus he may show that there had been previous difficulties or quarrels between himself and the person assaulted, explaining his own reason for being at the place where the difficulty occurred. So, too, defendant may show that previous to the difficulty his antagonist had been guilty of acts of conduct evincing hostility toward him, or of conduct which would tend to explain his motive in acting as aggressor. Previous specific acts of violence by him toward accused and others in his presence, and information to accused of other such acts may be shown. Defendant may show that on former occasions he assaulted or attacked, beat, waylaid, or shot at him.' Thornton v. State, 18 Ala.App. 225, 90 So. 66; Gunter v. State, 111 Ala. 23, 20 So. 632, 56 Am. St.Rep. 17." However, in the Craven case the acts of violence sought to be shown were directed against the defendant, and no attempt was made to introduce specific acts against persons other than defendant.

In Hoomes v. State, 34 Ala.App. 121, 37 So.2d 686, 688, certiorari denied 251 Ala. 392, 37 So.2d 690, we held that appellant should have been allowed to testify that his daughter told him immediately prior to the killing that deceased was across the street "'raising a ruckus'" with appellant's wife. Judge Carr quoted approvingly from 2 Wigmore on Evidence, Section 248, p. 61:

"'If it could be shown that the deceased had just before been running amuck in the streets, and that the defendant was informed that the deceased was on his way towards the defendant's locality, it is difficult to believe that any court would decline to consider this conduct as bearing on the defendant's apprehensions.'"

This section goes on to say: "The fact that the circumstances creating apprehension is a single act or series of acts, instead of a general character, does not necessarily destroy its capacity to create apprehension. Nor does its distance in time from the moment of the affray necessarily have that effect. Such particular acts may or may not in a given case be calculated to create apprehension; but there is no reason for a fixed rule of exclusion, invariably forbidding their consideration.

"The state of the law has come on the whole to favor the admissibility of such facts. Nevertheless, in the majority of jurisdictions, such evidence was, for a long time absolutely excluded. In some instances this was probably due to a notion that the deceased's character is sought objectively to be shown by particular acts (on the principle of Par. 198, ante); but the real purpose is merely to show such conduct as would naturally excite apprehension, whether it objectively indicates a fixed trait of character or not. Certainly all analogies of the law (apart from the common sense of the situation) favor such evidence; for if particular vicious acts of an animal are relevant to show that its owner was warned of its viciousness (Post. Par. 251), and if particular misconduct of an employee is relevant to show that his employer was warned of his incompetency (Post. Par. 250), then particular deeds of unscrupulous violence may well be deemed relevant to show an apprehension of violence from such a person. The true solution is to exercise a discretion, and to admit such facts when common sense tells us that they could legitimately affect a defendant's apprehension."

In brief counsel quotes as follows from State v. Hanlon, 38 Mont. 557, 100 P. 1035, 1041:

"The admissibility of this character of evidence is not a violation of the well-settled rule that reputation may not be shown by proof of specific acts * * *. This may be shown, of course, only by [general reputation]. Such evidence is admissible for the purpose of showing which of the parties to the affray was the aggressor, when there was no eyewitness or when the fact is in doubt."

However, the court in the Hanlon case said further:

"But no hard and fast rule of exclusion may be laid down. A wise discretion should be the guide, and in all cases where the specific act, by reason of its proximity in time and place, would legitimately reflect upon the conduct or motives of the parties at the time of the affray, and especially when, as in this case, it bears some relation to the main fact, the homicide, it should be admitted. 1 Wigmore on Evidence, 248. It is within the purview of this limitation that we hold the evidence offered in this case to be admissible."

It is further stated in Section 347, 26 Am.Jur., supra:

"In such cases, the trial court is granted a wide discretion in permitting the introduction of evidence of this kind. Of course, such evidence will be excluded, in a proper case, for remoteness with respect to the time of the homicide, even though the defendant has knowledge of such acts."

In State v. Ardoin, 28 N.M. 641, 216 P. 1048, 1050, the court said:

"It strikes us that the true guide should be a reasonable discretion, and whenever the specific act, by reason of its character, or its relationship in time, place, or circumstance to the other facts in the case, would legitimately and reasonably either affect the defendant's apprehensions or throw light on the question of aggression, or upon the conduct or motives of the parties at the time of the affray, it should be admitted."

Each case must of necessity be largely determined upon its own facts. We conclude there was no abuse of the court's discretion in sustaining the objections to these questions, in view of the remoteness in time and lack of connection in circumstance to the homicide of the matters sought to be shown.

The statement in writing made by defendant to the police officers shortly after her arrest was introduced in evidence by the State on the direct examination of officer W. E. Taylor. Defendant, as a witness in her own behalf, testified to threats and other

statements made by deceased shortly before she stabbed him. These statements did not appear in the written statement. The court, over objection, permitted the State to cross-examine the defendant as to whether she told the officers of these threats and actions of deceased when she made the earlier statement. She stated that she did tell the officers of these matters.

In rebuttal officer Taylor denied that defendant had told of these matters at the time she made the confessory statement. The objections were properly overruled.

The defendant, having elected to testify in her own behalf, was subject to cross-examination like any other witness, and to be questioned as to prior statements made by her and her answers contradicted by other evidence. Kelly v. State, 160 Ala. 48, 49 So. 535; Smith v. State, 137 Ala. 22, 34 So. 396; Hicks v. State, 99 Ala. 169, 13 So. 375.

Counsel argues that defendant should have been permitted to examine the statement before testifying. The statement was read to the jury on its introduction and no request was made for an examination of the statement, and no such ground of objection interposed to the questions.

The evidence presented a jury question and was sufficient to sustain the judgment of conviction. There was no error in the refusal of the requested general affirmative charge nor in the denial of the motion for a new trial.

The other charges refused to defendant or covered by the oral charge or other charges given at defendant's request were incorrect statements of the law, invasive of the province of the jury, or otherwise faulty.

The judgment of the trial court is affirmed.

Affirmed.