Appellant was convicted of violating the Alabama Code of Ethics for Public Officials pursuant to the provisions of Section 36-25-1, et seq., Code of 1975, as last amended, being Act No. 130, Regular Session, 1975. She was sentenced to one year in the penitentiary which sentence was to run concurrently with the three year sentence imposed upon her in a previous conviction under another specific provision of the Ethics Statute. That conviction was affirmed by this court on November 20, 1979.
Omitting the formal parts, the indictment reads as follows:
 "The Grand Jury of said County charge that, before the finding of this indictment, *Page 13 
Melba Till Allen, whose name is to the Grand Jury otherwise unknown, on or about to-wit: the 2nd day of May, 1977 in a statement of economic interests required to be filed by the said Melba Till Allen with the Alabama State Ethics Commission on a form provided by the said State Ethics Commission, pursuant to the provisions of Act 130, Regular Session of the Legislature of Alabama, 1975, did feloniously fail to list her indebtedness to banks operating or doing business in the State of Alabama in that, to-wit: the said Melba Till Allen did swear or affirm that as of December 31, 1976 she was indebted to nine (9) such banks for amounts less than Twenty-Five Thousand and no/100 ($25,000.00) Dollars and that she was indebted to one (1) such bank in an amount exceeding Twenty-Five Thousand and no/100 ($25,000.00) Dollars but less than Fifty Thousand and no/100 ($50,000.00) Dollars, and that she was indebted to one (1) such bank in an amount exceeding Fifty Thousand and no/100 ($50,000.00) Dollars but less than One Hundred Thousand and no/100 ($100,000.00) Dollars and that she was indebted to one (1) such bank in an amount of One Hundred Thousand and no/100 ($100,000.00) Dollars or more, when, as of December 31, 1976, the said Melba Till Allen was indebted to such banks in amounts as follows, to-wit:
 OUTSTANDING INDEBTEDNESS AS OF DECEMBER BANK 31, 1976
Alabama City Bank of Gadsden $ 10,000.00 Alabama National Bank of Montgomery 47,963.00 Auburn Bank and Trust Company 7,329.63 Bank of Huntsville 5,180.41 Bank of the Southeast 50,000.00 Brent Banking Company 10,060.25 Cahaba Bank and Trust Company, Inc. 8,682.01 Central Bank of Birmingham 11,904.48 Central Bank of Montgomery 15,000.00 Central Bank of Uniontown 70,000.00 Cherokee County Bank 7,814.00 Citibanc of Alabama/Fultondale 15,000.00 First National Bank of Greenville 2,412.09 The Citizens Bank, Oneonta 59,000.00 The Citizens Bank, Prattville 25,208.96 The City National Bank 15,810.00 First Bank of Macon County 20,043.83 First Alabama Bank of Gadsden, N.A. 4,763.68 The First National Bank of Autauga County 13,530.59 The First National Bank of Florence 5,500.00 The First State Bank of Altoona 10,098.05 The First State Bank of Lamar County 9,389.39 The Fort Deposit Bank 40,115.75 The Greenville Bank 2,843.45 Luverne Bank and Trust Company 3,866.00 MetroBank 30,000.00 Merchants National Bank 19,000.00 National Bank of Commerce of Birmingham 15,237.32 The Peoples Bank of Carrville 9,285.30 Peoples Bank of Tuscaloosa 6,000.00 Pike County Bank 11,764.95 Shelby State Bank 8,758.42 Southern National Bank 5,783.63 Southern Bank, N.A. 500,000.00 Union Bank Trust Co. 51,104.54 Wilcox County Bank 100,650.00
 against the peace and dignity of the State of Alabama."
The evidence presented by the State showed that appellant did not correctly complete the "Statement of Economic Interests" on the form furnished her by the State Ethics Commission. This form included a Statement of Indebtedness to Banks, Credit Unions and Savings and Loan Associations, Insurance Companies, Mortgage Firms, Stock Brokers, Other Businesses (credit card indebtednesses), and Individuals. Appellant signed the form on April 29, 1977, and it was received by the Commission on May 2, 1977. The form expressly required a report of debts owed to all businesses operating in Alabama on December 31 (1976) including debts of the spouse and dependent children.
The statement of indebtedness is required pursuant to the provisions of Section 36-25-14, Code of 1975. This section further *Page 14 
provides, in part, "In the event that said information required herein is not filed as required, the Commission shall notify the public official or employee concerned as to his failure to so file and the public official shall have 10 days to file said report after receipt of said notification.
 "(b) After the original filing of the above prescribed statement(s), each person shall make additional subsequent filing within 90 days after the termination of each succeeding reporting year . . ."
It was stipulated that appellant was the State Treasurer at the time she filed the financial statement for the year ending on December 31, 1976. The financial statement filed by Mrs. Allen revealed that she was indebted to a total of 12 Alabama banks.
The State then proceeded to call witnesses to prove the allegations of the indictment to show that Mrs. Allen was individually or jointly indebted to 36 banks instead of 12 banks as she reported on her disclosure statement. The first witness was Mary McDaniel who testified that she was employed by the Alabama City Bank of Gadsden, Alabama, and was custodian of the records of that bank. She stated that appellant and her husband executed an unsecured note to the bank in the year 1976 in the amount of $10,000.00. This note was given and accepted by the bank as security on a note made to the bank by D.E. Locklear and wife, Bette Locklear, who had defaulted on the payment of the note. The note executed by Mrs. Allen and her husband was outstanding on December 31, 1976. Appellant failed to disclose this indebtedness to the State Ethics Commission. Ms. McDaniel further testified that, on the date of appellant's trial, there was an outstanding balance due on this note in the amount of $8,890.00. The note was introduced into evidence.
Mr. Hugh Webb testified that he was the Drive-In Manager and Custodian of the records of the Cherokee County Bank, Centre, Alabama. He stated that appellant was personally liable on a note to the bank on October 14, 1976, in the amount of $7,814.00. The note was unsecured and at the time of appellant's trial the note was not due and the balance was still $7,814.00. The loan records were introduced into evidence.
Mr. Donald G. Henderson stated that he was the Custodian of the records at the City Bank of Alabama, Fultondale, Alabama. He said that Mrs. Allen executed an unsecured note to the bank in the amount of $15,000.00 and this indebtedness was outstanding on December 31, 1976. The note was introduced into evidence.
Mrs. Jo Karen Parr testified that she was an attorney with an outstanding law firm in Montgomery and a Certified Public Accountant licensed to practice accounting by the State Board of Public Accountants in the State of Alabama. Also she is a part time Deputy District Attorney for Montgomery County and has been serving in that position since May 1, 1978. It was the duty of Mrs. Parr to examine all the notes and bank records of the various banks to which appellant was indebted during the year 1976 and had failed to list on the disclosure statement filed with the Ethics Commission. A great number of these notes and records had been subpoenaed at the instance of the Montgomery Grand Jury. Her testimony on direct examination covered some 40 pages in the transcript. We will summarize her testimony for the sake of brevity.
Mrs. Parr stated that she found four notes signed by Mrs. Allen to the Alabama National Bank of Montgomery which were outstanding on December 31, 1976. These notes and bank records were identified by State's exhibit numbers and introduced into evidence but we see no useful purpose in mentioning the exhibit numbers. There was one note in the amount of $5,000.00 and one in the amount of $6,500.00, both of which were unsecured. There was one note in the amount of $35,000.00 executed by Randy E. Allen, Marvin E. Allen, and Melba Till Allen. This note was secured by 508 shares of stock in the Keith Williams Corporation, a contracting firm owned by the Allen family. There was another note in *Page 15 
the amount of $2,556.00 signed by Mrs. Allen alone and it was unsecured.
There was an unsecured note, signed by Melba Till Allen, to the Auburn Bank and Trust Company, Auburn, Alabama, in the amount of $7,329.63. This was a renewal note dated June 15, 1976.
There was an unsecured note in the amount of $5,475.51, signed by Melba Till Allen, to the Bank of Huntsville, Huntsville, Alabama. This note was outstanding on December 31, 1976.
Mrs. Parr viewed the bank records of the Bank of the Southeast in Birmingham, Alabama, and ascertained that Mrs. Allen was indebted to that bank in the amount of $50,000.00 as evidenced by an unsecured note which was outstanding as of December 31, 1976. The note was dated November 5, 1976.
This witness viewed the records of the Brent Banking Company in Brent, Alabama, and found that Mrs. Allen had executed an unsecured note to that bank in the amount of $10,060.25 which was due at the year end of 1976.
Mrs. Allen signed an unsecured note to the Cahaba Bank and Trust Company in the amount of $10,000.00. The unpaid balance on this note as of December 31, 1976, was $8,682.01.
Mrs. Allen was indebted to the Central Bank of Birmingham on a note in the face amount of $8,250.00 which was outstanding on December 31, 1976. The bank records reflected there was a second note in the amount of $15,000.00 signed by Mrs. Allen and Virginia Suggs. Both notes were unsecured and were due and payable as of December 31, 1976.
The records of the Central Bank of Uniontown, Alabama, reflected there was a promissory note executed by Melba Till Allen, Marvin E. Allen, Mary H. Nolen and Wilbur B. Nolen in the amount of $70,000.00. This note was secured by a real estate mortgage and was outstanding on December 31, 1976.
Mrs. Parr examined the records of the First National Bank of Greenville, Georgiana Branch, and found a secured note on the real estate executed by Marvin E. Allen and Mrs. Marvin E. Allen. The balance due and owing on this note as of December 31, 1976, was $2,412.09.
A review of the records of the Citizens Bank of Oneonta, Alabama, reflected a note signed by Melba T. Allen and Marvin E. Allen, in the amount of $59,000.00. This note was secured by a real estate mortgage and was unpaid as of December 31, 1976.
A promissory note was executed by Melba Till Allen to the Citizens Bank of Prattville, Prattville, Alabama, dated December 30, 1976, and secured by a 1973 Kenworth Tractor and a 1967 Hardy Trailer with a 1975 Model Box. Mrs. Allen was solely liable on this note. The balance due and owing on December 31, 1976, was $25,208.96.
Mrs. Allen signed a promissory note to City National Bank of Sylacauga, Alabama, dated November 15, 1976, in the amount of $15,810.00. This was an unsecured note and the note was outstanding on December 31, 1976.
Mrs. Parr further testified that the First Bank of Macon County was no longer in existence and the F.D.I.C. had custody of their loan records. She went to the F.D.I.C. Liquidator's Office in Notasulga and reviewed the loan records there. She stated, "This is a note and ledger card. The note is dated August 26, 1976. The amount of the note is $20,043.83. The note is signed by Melba Till Allen." The note is unsecured and was due and unpaid on December 31, 1976.
Mrs. Allen signed a $5,000.00 note to the First City National Bank of Gadsden, Alabama, dated June 27, 1972, payable on demand. It was an unsecured note and the outstanding balance on December 31, 1976, was $4,753.68.
Mrs. Allen signed a note to the First National Bank of Autauga County, dated October 5, 1976, in the amount of $13,530.59. The note was unsecured and the face amount of this note was due and unpaid on December 31, 1976. *Page 16 
Mrs. Allen executed a note payable to the First National Bank of Florence, Alabama, in the amount of $5,500.00, dated August 25, 1975. The note was unsecured and the amount was due and unpaid on December 31, 1976.
An unsecured note in the face amount of $12,000.00 was signed by Mrs. Allen to The First State Bank of Altoona on September 12, 1972. As of December 31, 1976, the unpaid balance was $10,098.05.
A note signed by Marvin E. Allen and Melba Till Allen payable to The First State Bank of Lamar County, dated March 18, 1975, in the amount of $17,300.00, was secured by a 1973 White Freight Liner Truck and a 45 foot Hoffer Trailer. The outstanding balance on this note as of December 31, 1976, was $9,389.39.
Two promissory notes, $10,000.00 and $30,000.00 respectively, were executed by Mrs. Allen alone to The Fort Deposit Bank on August 18, 1976. These two notes were secured by a mortgage signed by Melba Till Allen and Marvin E. Allen. According to the testimony of Mrs. Parr, "The ledger card reflects that $40,115.75 is due and owing as of December 31, 1976."
An unsecured demand note in the amount $2,843.45 was executed by Melba Till Allen to the Greenville Bank and this same amount was outstanding and unpaid, according to the bank's loan records, as of December 31, 1976.
The general liability ledger of the Luverne Bank and Trust Company reflected that as of December 31, 1976, Mrs. Allen owed the bank $3,866.57. The note originally signed by Mrs. Allen was repaid on October 25, 1977.
An unsecured note in the amount of $30,000.00 was executed by Melba Till Allen and Louise Nolen to the MetroBank of Birmingham on October 1, 1976. The note was outstanding and unpaid as of December 31, 1976.
Mrs. Allen signed an unsecured note in the amount of $19,000.00 payable to The Merchants National Bank of Mobile on November 9, 1976. This was her indebtedness alone and this sum was unpaid on December 31, 1976.
A promissory note in the sum of $15,237.32, payable to the National Bank of Commerce of Birmingham, was executed by Melba Till Allen on October 18, 1976, and this note was due and payable on January 17, 1977. She was still indebted in this amount on December 31, 1976.
A note signed by Marvin E. Allen and Melba Till Allen, payable to the Peoples Bank of Carville, in the sum of $25,200.00, dated January 24, 1975, was secured by one 1973 Kenworth Diesel Tandem Truck and one 1974 40 foot flat trailer. Both Mr. and Mrs. Allen were personally and individually liable on this note. It was not a corporate indebtedness. As of December 31, 1976, there was an outstanding balance on this note in the amount of $9,285.30.
A promissory note, dated November 29, 1976, in the amount of $6,000.00, payable to the Peoples Bank of Tuscaloosa, was signed by Melba Till Allen alone. It was an unsecured note and the entire amount was outstanding on December 31, 1976.
A promissory note dated June 29, 1976, in the sum of $7,731.29, payable to the Pike County Bank, was signed by Marvin E. Allen and Melba Till Allen. This note was secured by a 1972 model Mack Truck and a 1972 East Dump Trailer. This was not a corporate obligation. Both Mr. and Mrs. Allen were personally and individually liable on this note.
The Pike County Bank records reflect that an installment note in the original amount of $11,308.52 was executed by Melba Till Allen alone. This note was secured by a 1971 East Dump Trailer equipped with a hydraulic hoist. Mrs. Parr testified that she had not totaled the amounts due and owing on these two notes but both notes were unpaid as of December 31, 1976.
A promissory note, dated July 10, 1976, in the amount of $8,500.00 payable to the Shelby State Bank, was signed by Melba Till Allen, alone. It was an unsecured note and on December 31, 1976, there was an outstanding balance of $8,758.42. *Page 17 
A promissory note, dated January 27, 1976, in the amount of $6,262.27, payable to the Southern National Bank of Birmingham, was signed by Melba Till Allen. The note was unsecured and on December 31, 1976, the unpaid balance was $5,783.63.
A promissory note, dated August 27, 1976, in the amount of $500,000.00, payable to the Southern Bank, N.A., Montgomery, Alabama, was executed by Melba Till Allen, Louise H. Nolen, and Mark Lyons, III, and this note was secured by a real estate mortgage. As of December 31, 1976, this same amount was outstanding.
Mrs. Parr reviewed the loan records of the Union Bank and Trust Company and found three notes that were unpaid and that were outstanding on December 31, 1976. One was an unsecured note, payable on demand, signed by Mrs. Allen, on which there was an unpaid balance in the amount of $4,887.44. There was another note, dated December 3, 1976, in the amount of $24,200.00, executed by Marvin E. Allen and Melba Till Allen. It was secured by the transfer and assignment of a promissory note and mortgage. Mrs. Parr stated she found an installment note on a ledger card which was paid on June 30, 1977. She testified that the indebtedness represented by these three notes was unpaid as of December 31, 1976. These notes and loan records of the bank were introduced into evidence.
Mrs. Parr further testified that she checked the records of the Wilcox County Bank which had closed its banking operations. The records were in the possession of the F.D.I.C. Liquidating Agent. She was asked if these records reflected any loans to Mrs. Allen. She replied, "Yes, sir. The bottom document in the earlier document or the document that we're most concerned with here. It's a note dated November 27, 1976. The face amount of the note is $100,650.00. It is signed by Marvin E. Allen and Melba Till Allen. The note is unsecured." This amount was still outstanding as of December 31, 1976.
Mrs. Parr concluded her testimony by saying that she didn't go to any banks that did not have any outstanding indebtedness on Mrs. Allen. All of the notes, ledger sheets and related bank documents, examined by Mrs. Parr and introduced into evidence, pertained to personal or joint indebtedness to the 36 banks listed on the indictment. Stated another way, none of them involved corporate indebtedness or obligations.
It was the State's theory that Mrs. Allen filed a false statement on her financial condition to the Ethics Commission, dated April 29, 1977, and received by the Commission on May 2, 1977, with the avowed intent to deceive and conceal her true and accurate indebtedness from the Ethics Commission; that she did this with an evil intent to hide from the Commission her true financial condition and, ultimately, to prevent the general public from knowing the truth as to her indebtedness. It was the State's contention that Mrs. Allen concocted a scheme to get several banks in Alabama to issue letters of credit in the sum of $50,000.00 each, use these letters of credit in an out of state bank, consolidate her indebtedness, and discharge her obligations, so that in the event her disclosure statement was checked it would show she had a clean slate. The record reflects that her scheme was deliberate and willful and her motives were mala in se. If her financial disclosure statement had been truthful, reflecting that she was indebted to State banks in amounts over one million dollars, the wrath of the general public would have swept across this state with hurricane force, leaving her political future in shambles. It was certainly relevant for the State to adduce evidence from which the jury could legally infer her true motives and evil intent.
The State called Mr. H.G. Hayes, President of the American Bank of Geneva, who testified that he met Mrs. Allen in the summer of 1977 at a local motel and from there they went to a local restaurant for dinner. He could not recall the precise date but said it was some time in September. They were accompanied to the restaurant by Mrs. Louise Nolen, Vance Dyar and Mr. John Ward. Mr. Ward was Chairman of *Page 18 
the Board of the American Bank of Geneva. Mr. Hayes further testified that the purpose of the meeting was to obtain letters of credit from banks to consolidate loans of Mrs. Allen. He explained that a letter of credit is a commitment from a bank for a loan some time in the future.
State's Exhibit No. 50 was shown to Mr. Hayes and he identified it as a copy of a letter of credit issued by the American Bank of Geneva to Leisure and Development Properties, Inc., for $50,000.00 on the condition that it would not be used or negotiated for three years, and stated, "We had a ten day option at that time to negotiate it." He said it was explained to him in Mrs. Allen's presence that Leisure Development was to be the medium through which letters of credit would be used at some out of state bank or place to obtain a loan to consolidate other loans. He stated that prior to the issuance of the letter of credit Mrs. Allen had a loan from his bank and her indebtedness was to be paid by a consolidated loan from out of Alabama. It was Mrs. Allen's loans which prompted the meeting on this occasion and which prompted the issuance of a Letter of Credit by his bank. Mr. Hayes further testified that the $50,000.00 Letter of Credit issued by the American Bank of Geneva was subsequently voided due to "all the publicity about the activities of the Treasurer's Office."
Mrs. Allen was not an Incorporator of Leisure and Development Properties, Inc., a corporation. However, she wrote the following letter on August 23, 1977:
"To: Selected Banks of Alabama
"From: Melba Till Allen
"Gentlemen:
 "As the holder of this letter, you are hereby guaranteed by me that I accept total responsibility for any Letter of Credit issued by you to Leisure 
Development Properties, Inc., according to the terms and conditions of said Letter of Credit.
 "I have read and understand the terms and conditions of your Letter of Credit, thus making this letter my personal irrevocable guarantee to pay same.
 "Copy of this letter will serve the purpose as the original.
 "Sincerely yours, /s/ Melba Till Allen Melba Till Allen
"MTA:n
 "I hereby certify that this is a true and correct copy of Letter of Intent and Mrs. Allen appeared before me this date, August 23, 1977 and voluntarily signed same.
 /s/ Louise H. Nolen Louise H. Nolen."
A copy of the Articles of Incorporation was introduced into evidence as State's Exhibit No. 53. An examination of this exhibit does not show that Mrs. Allen was an incorporator, officer, director, or shareholder. According to the above quoted letter she became a guarantor to any bank in Alabama issuing a Letter of Credit to such corporation. Certainly some consideration must have accrued to her to issue such a letter of guaranty.
The State called as a witness the custodian of records in the Office of the Judge of Probate to prove the Articles of Incorporation of Leisure and Development Properties, Inc. The Incorporators were Louise Nolen, M.F. Dyar, and Jack Bonner. The date of incorporation was August 31, 1977.
The State introduced into evidence Exhibit No. 51 which reads as follows:
 "Route 1, Box 225 Hope Hull, Alabama 36043 August 11, 1977
"To: Selected Banks of Alabama
"From Melba Till Allen
"Gentlemen:
 "This letter will introduce Mr. V.C. Dyar, who is assisting me in the formation and combining of various properties owned in part and in whole by me.
 "Mr. Dyar will explain in detail the proposed plan of action I am seeking to develop. Any courtesies extended Mr. Dyar on my behalf, and any assistance you might render will be greatly appreciated.
 "Yours very truly, /s/ Melba Till Allen *Page 19 
"MTA:n
 "Sworn to and subscribed before me this 11th day of August, 1977.
 /s/ Louise H. Nolen Notary Public
"Seal:"
Mr. Melvin G. Cooper, Executive Director of the Alabama State Ethics Commission, explained to the court and the jury the functions of the Commission. He identified State's Exhibit No. 6 as the Statement of Economic Interests that is required to be completed by April 30th of each year by all elected and appointed public officials of the State and all employees earning $15,000.00, or more. State's Exhibit No. 6 was the form filed by Mrs. Allen and it was received into evidence without objection. This form includes the spouse and dependent children of the reporting official or employee. The form also includes income from salaries and businesses. Mrs. Allen listed her salary as Treasurer of the State of Alabama, income from Keith Williams, a construction company, Quail Run and PSWALA ATD. Her salary was listed by an "X" mark in the column as being $10,000.00 or more. She put an "X" in the same column as salary from Keith Williams and an "X" in the same column as profits from Quail Run. In the column headed $1,000.00 but less than $10,000.00 she listed PSWALA ATD and noted the income was "fees."
In column B she listed the following businesses from which she, her spouse and dependent children received no income: Lou-Mel Corp., Stars Over Alabama, and Ross Ag. Enterprises.
The form requires the reporting person to set out all indebtedness to all businesses operating in Alabama on December 31 of each year for which the report is filed. Mortgages on the home in which the reporting person lives are not to be included. The businesses include banks, loan associations, insurance companies, mortgage firms, stockbrokers, other businesses, and individuals. On this part of the form Mrs. Allen listed 12 banks and one insurance company.
Mr. Cooper testified that he had in his possession a document showing that Mrs. Allen was indebted to a number of banks greatly in excess of 12. In an endeavor to get Mrs. Allen to disclose to the Ethics Commission the true number of banks to which she and her husband were indebted, he wrote her the following letter on September 23, 1977 (State's Exhibit No. 5):
 "The Honorable Melba Till Allen State Treasurer State of Alabama State Capitol Montgomery, Alabama 36130
"Dear Mrs. Allen:
 "We are completing a review of Statements of Economic Interests, filed by officials and certain employees of State, County and Municipal government between January 1 and April 30, 1977. "In this connection, we have received information possibly indicating that through oversight, you did not show the proper number of banks to which you and your husband were indebted as of December 31, 1976. Additionally, a question has been raised as to whether you were also indebted to `other businesses' as shown in Item VI of the financial disclosure form. "It is also possible that you have omitted ownership of property in Montgomery County which should be shown in Item IV. I have attached copies of the appropriate pages in the event you wish to amend your Statement of Economic Interests. Of course, if the entries you have previously made are correct, you need only inform us of this fact.
 "Finally, we would appreciate a definition of `Quail Run' and `PSWALA ATD' which are shown as sources of income in Item II of the Form. May we hear from you regarding these matters by October 7, 1977?
 "Thank you in advance for your cooperation and assistance.
"Sincerely,
 Melvin G. Cooper Executive Director
"MGC/js
"Enclosures" *Page 20 
On September 26, 1977, Mrs. Allen replied to Mr. Cooper's request by the following letter:
 "Mr. Melvin G. Cooper Executive Director State Ethics Commission State of Alabama 312 Montgomery Street Montgomery, Alabama 36104
 "RE: Review of Statement of Economic Interest.
"Dear Mr. Cooper:
 "As per your letter with reference to my Hope Hull, Alabama, property, I did not include the house and land in Hope Hull, where we reside. I understood that I was to omit that. However, I will be happy to give you this information if it is required.
 "Regarding `indebtedness to other businesses,' we were negotiating with Hawthorne Melody Farms owners for an additional part of Stars Over Alabama, but the negotiations were not finalized until after the reporting time, therefore, I could not truly list it, because it was not finalized.
 "I did not realize that I was to include business loans in the top part of the form, but if I was supposed to list all corporate loans, I would have to go into great detail, because Keith Williams Corporation owns many pieces of equipment and grossed over $1.5 million last year.
 "`Quail Run', is defined as a piece of property or a subdivision in Mobile, Alabama.
"`PSWALA, Ltd.', is an interest in a movie.
 "I do not now, or have never owned property in Washington County.
 "If I can be of further assistance in clarifying this matter, please advise.
 "Sincerely yours, /s/ Melba Till Allen MELBA TILL ALLEN State Treasurer
"MTA/mb"
It will be noted in this letter that Mrs. Allen did not mention any additional banks to which she or her husband were indebted.
Evidently the news media had learned about Mrs. Allen's financial problems and began a series of articles concerning them. On October 6, 1977, Mrs. Allen wrote the following letter to Mr. Cooper which was introduced into evidence as State's Exhibit No. 7:
 "Mr. Melvin G. Cooper Executive Director State Ethics Commission 312 Montgomery Street Montgomery, AL 36104
"Dear Mr. Cooper:
 "Although corporate loans are not required on our ethics report, I want to disclose them to you in view of the vicious attack by The Birmingham News regarding any person or corporation in which I am involved.
 "As the Keith Williams Corporation is a corporation owned completely by my family, some of the loans are endorsed by, or in the name of, my husband, son or me. The Corporate records reveal that these are Corporate loans, and endorsements are an added protection for the lender.
 "The much publicized `Stars Over Alabama' project is real estate in North Alabama. The loans on this property were already in the banks when I became involved; however, accounts payable loans have been made since.
 "On the attached page I have listed loans for the different businesses to the best of my knowledge as of December, 1976.
"If you need further information, please let me know.
"Yours very truly,
 /s/ Melba Till Allen MELBA TILL ALLEN State Treasurer
"MTA:rdf
"Attachment"
To this letter Mrs. Allen attached a statement headed "Keith Williams Trucking Company — Statement of Indebtednesses." This attachment was not on the copies of the form sent her by Mr. Cooper as mentioned in State's Exhibit No. 5. This attachment *Page 21 
was compiled by Mrs. Allen. On this attachment the number of banks to which Mrs. Allen was indebted was shown to be 17 as opposed to 12 banks shown on State's Exhibit No. 6. It cannot be ascertained from the attachment if Mrs. Allen was adding 17 additional banks to which she was indebted or whether she was adding five additional banks. Convinced that Mrs. Allen was not going to cooperate with the Commission in giving full and complete information regarding her financial status the Ethics Commission through the Executive Director wrote Mrs. Allen and requested that she give him and his assistant, Mr. Howard E. McKenzie, blanket authority to review her financial transactions in banks throughout the State. Mrs. Allen wrote a letter to Mr. Cooper giving this authorization. There were about 311 banks in Alabama and all but 101 banks honored the authorization for Mr. Cooper and Mr. McKenzie to examine the loan records pertaining to Mrs. Allen.
As to the banks which refused to cooperate the Commission directed Mr. Cooper to contact the District Attorney to have the grand jury subpoena the records of these banks. This was done and the loan records of these balking banks were delivered to the Montgomery County Grand Jury and Mrs. Allen was indicted for failing to comply with the Ethics Commission in making a true financial disclosure statement as required by law.
Testifying in her own behalf Mrs. Allen said she waited until almost the last minute on the Ethics Report and it was hurriedly done; that she tried to pick out the loans that were strictly personal and she did not realize that she left out some until it was brought out at trial. She said that she couldn't remember exactly how the loans were titled. She admitted she did not use the copies of the forms sent her by Mr. Cooper, but used a form that she prepared.
On cross-examination she testified that in the short time she had to complete the report she could have made a mistake. She tried to explain that some of the loans could have been for the Keith Williams Company which was owned by her, her husband and son. She stated that there were 17 bank loans made on behalf of the company. She claimed that she listed more loans than were contained in the indictment.
Mrs. Allen testified on direct examination that no "bank or anybody lost one dime" as a result of her actions. The State cross-examined Mrs. Allen in regard to other loans, one from the First Bank of Alabaster and one from the First Alabama Bank of Montgomery. The loan from the First Bank of Alabaster, State's Exhibit No. 56, concerned a business venture involving a motion picture. The venture was in the form of a limited partnership with Mrs. Allen signing the promissory note as general partner. BAPSH Films, Ltd. was the original name of the venture, but it later became known as PSWALA. The two names were acronyms composed of initials of the parties involved.
Earl Standifer was affiliated with the BAPSH Films, Ltd. venture. He signed three promissory notes in the amount of $16,250.00 each which were used as collateral for the loan from the First Bank of Alabaster. These three notes were introduced into evidence as State's Exhibit 57.
Under cross-examination Mrs. Allen testified that she represented to Standifer that these notes would be paid "from the earnings of the film." "I told him that if later down the road if he wanted to sell it there were some other people interested." Though she did not remember exactly, she stated her words "could have been" to the effect that she would find buyers for Standifer's part of the venture.
The State offered a letter marked State's Exhibit 58 for appellant to examine. She did so and read the contents of the letter into evidence.
 "Dear Melba: Mr. Ned Bearden, President of the First Bank of Alabaster, called me to come in and talk with him regarding the note that I co-signed with you in the name of Bapsh Films, Ltd. It was due August 10, 1977. He stated that the bank examiners said that it had to be either paid off or security made *Page 22 
immediately to satisfy them. Please take care of this right away.
 "Melba, according to the information in my file, this is not even close to what we initially invested in. Therefore, I want you to sell my part, as you said you could do, just as soon as possible, and clear this matter up with my banker.
"I am looking forward to hearing from you very soon.
"Sincerely, Earl Standifer."
Mrs. Allen testified that she had not sold Standifer's share of the venture.
Mrs. Allen further testified that Thelma Eubanks was initially going to buy into BAPSH Films, Ltd., but later changed her mind. The State offered for Mrs. Allen's examination and subsequently into evidence State's Exhibit No. 59, a note to the First Alabama Bank of Montgomery, dated May 4, 1976 in the amount of $25,000.00 and signed by Mrs. Allen, Virginia H. Suggs and Thelma Eubanks.
 "Q. Then you're saying that at the time she signed this note that she became a limited partner in BAPSH, Films, Ltd.?
 "A. She was in the process. I'm not sure. That was her part of it, so I'm not really sure."
Mrs. Allen stated that at the time Mrs. Eubanks signed the note, "We discussed with her exactly like we did the others . . We just told her about the film. I really couldn't represent a great deal because I don't know that much about films."
Mrs. Eubanks later told Mrs. Allen that she wanted to get out of the venture. Mrs. Allen told Mrs. Eubanks that she would be glad to get her off the note if the bank would let her off. Subsequently, when Mrs. Allen talked to "the bank", the bank officials were unwilling to release Mrs. Eubanks from her obligation. Mrs. Allen testified that at some point Mrs. Eubanks was no longer obligated. Appellant said, "As far as I understood, she was, because we renewed it and she didn't sign it. I, was not misrepresenting anything to her." "Q. I understand, but did you tell her that?" "(A) Yes, because I understood she was [off the note] because the bank allowed us to renew it and pay the interest without her signing it . . . He [an officer with First Alabama Bank] let me renew it without her signing it."
After a discussion in chambers the State continued its cross-examination of Mrs. Allen. She testified about another business proposal, known as Leisure Development Company, Incorporated. Mrs. Allen said this was proposed by Vance C. Dyar, one of her associates, "to put mine and Mrs. Nolen's assets into this corporation." Asked whether she went along with this proposal, she said, "Absolutely not." At this point she was asked whether or not she did in fact write a letter guaranteeing a letter of credit to the corporation. Mrs. Allen replied:
 "A. I'm glad to have the opportunity to talk about that letter. That is the letter that I signed for my partner for an authorization, and she let Mr. Dyar have it and he made a blanket endorsement out of it. And the first time I read that letter was in the Birmingham News, but it is my signature. Are you talking about the endorsement or the other one?
 "Q. I'm talking about State's Exhibit No. 52, Mrs. Allen.
 "A. Yes, this is the one that was used over my signature. This was given to Louise just blank, my partner, that I've been in business with since '73. I had no reason to worry about her having a sheet of paper with my signature on it."
Continuing, Mrs. Allen testified that, although the letter was notarized, she signed only a blank page, and it was not a letter of guaranty.
The State, proceeding further, asked Mrs. Allen about another letter, State's Exhibit 51, and about the Leisure Development Company, Inc. When asked about a meeting which allegedly occurred at the Sahara between her, her associates, and officers of a Geneva bank, Mrs. Allen denied that business proposals were discussed. She testified that the conversation was casual, "just chit-chat." *Page 23 
The State put on several witnesses to rebut Mrs. Allen at the conclusion of her testimony. Louise Nolen and Thelma Eubanks testified concerning their association with Mrs. Allen, as did H.G. Hayes of the American Bank of Geneva.
Thelma Eubanks testified that Mrs. Allen, Mrs. Suggs, and a Mr. Puckett asked her to invest in the BAPSH Films, Ltd., but that she did not have any money to do so. Mrs. Allen then asked her if she would endorse the note, State's Exhibit 59, saying they would only have it a short time and they would repay it. Mrs. Eubanks endorsed the note. Later she asked Mrs. Allen about the note and Mrs. Allen told Mrs. Eubanks she was no longer obligated. Mrs. Eubanks testified that she is presently the defendant in a suit filed by the bank to recover on the note.
H.G. Hayes is President of the American Bank of Geneva. He stated that during the summer of 1977 he and John Ward, Chairman of the Board of Directors of the bank, met Mrs. Allen, Vance Dyar, and Mrs. Nolen at the Sahara Restaurant in Montgomery.
Mr. Hayes was asked if anything was discussed by any person in the presence of Mrs. Allen concerning the letter of credit that was issued by his bank in September of 1977 to the Leisure Development Company, Inc. He replied, "Just that they were going to obtain, I thought, some nine, I believe, letters of credit of $50,000 each to be used to consolidate loans." He stated that the letter of credit given by his bank was guaranteed by a letter of guaranty from Mrs. Allen, which was delivered to him on August 23, 1977, by Dyar.
Testifying further, Mr. Hayes said that, at the meeting in Mrs. Allen's presence, the subject of obtaining State deposits for his bank was discussed. He said, "At the supper meeting," Dyar had told them they would get a State deposit that night. Hayes said Mrs. Allen stated, "That she had been interviewed by the Birmingham News that day and did not have time to get the deposit ready." Hayes stated that Mrs. Allen said after the meeting "that she could give us some demand deposits from time to time but it would have to be in small increments . . . because the legislature was watching the Treasurer's Office very closely concerning the deposits." Mr. Hayes stated that he saw Dyar subsequently and that on one occasion Dyar flew to the Geneva Airport with a State deposit for $500,000.
The appellant contends that the State by asking Mrs. Allen about the loans, and her representations thereto, was cross-examining her for impeachment purposes by asking her of her own specific bad acts in order to show her bad character. Likewise the appellant contends that the State by asking Mrs. Eubanks about her dealings with appellant was attempting to show the witness's bad character by testimony of others as to their knowledge of her specific bad acts. The appellant further contends the State's examination of Mr. Hayes adduced testimony about prior acts of the appellant's misconduct which was irrelevant and specifically excluded by the rules of evidence.
The record reflects that in each instance the State was proceeding with a logical purpose different from that alleged by the appellant.
A witness, by taking the stand, puts in issue his character or reputation for truthfulness. Pugh v. State, 42 Ala. App. 499,169 So.2d 27. One method of impeaching a witness is to disprove his statements made in court by the testimony of other witnesses. Jones on Evidence, 26.1, pg. 170. It is competent for a party to contradict his adversary's witness by showing the facts to be otherwise than as testified to by him, and thus discredit the witness. Smith v. State, 261 Ala. 270,73 So.2d 916. An accused in a criminal prosecution who testifies in his own behalf is likewise subject to contradiction. Holloway v.State, 38 Ala. App. 434, 89 So.2d 313, cert. denied 265 Ala. 697, 89 So.2d 317. The State was plainly rebutting or contradicting Mrs. Allen's testimony. *Page 24 
The facts adduced by the State were plainly material and relevant. They show a motive for Mrs. Allen's nondisclosure from which her intent may be inferred, i.e., if her extensive financial schemes had not existed there would have been no reason not to make a full disclosure.
Appellant contends that Act No. 130 is unconstitutional in that it violates Section 173 of the Constitution of 1901 which governs the impeachment and removal from office of certain public officials for the commission of designated crimes specified in that section. Appellant overlooks Section 176 of the Constitution of 1901 which provides:
 "The penalties in cases arising under the three preceding sections shall not extend beyond removal from office, and disqualifications from holding office, under authority of this state, for the term for which the officer was elected or appointed; but the accused shall be liable to indictment and punishment as prescribed by law." (Emphasis supplied.)
The Supreme Court of Alabama in Comer v. City of Mobile, Ala., 337 So.2d 742, upheld the constitutionality of Act No. 130 by holding: "The purpose of Act No. 130 was not so altered as to bring the taint of unconstitutionality as to all of its sections not heretofore stricken."
This Court followed Comer in affirming the conviction of appellant in an unrelated case on November 20, 1979, in an opinion by Judge DeCarlo.
Mrs. Louise Nolen was one of the incorporators of Leisure and Development Properties, Inc. She testified that the purpose of the corporation was to try to get all loans of Mrs. Allen and her loans together with their assets and put them under one umbrella; that Mrs. Allen was well aware that was purpose of the corporation as they both had discussed it. She further stated, "We were to incorporate all the Alabama loans into one company and due to the fact that Mrs. Allen was in politics, and attempt to get them in another out of state bank with the assets."
The testimony of Mrs. Nolen flatly contradicted the testimony of Mrs. Allen wherein she denied trying to get her loans in an out-of-state bank.
The evidence presented by the State, although conflicting, was overwhelming that Mrs. Allen filed a false Financial Statement with the State Ethics Commission. The State proved the allegations of the indictment beyond peradventure of a reasonable doubt.
Where there is legal evidence from which the jury can by fair inference find the defendant guilty, the Court of Criminal Appeals has no right to disturb the verdict; whether there is such evidence is a question of law, its weight and probative value are for the jury. Ala.Dig., Criminal Law, 1159.2 (8).
Appellant filed a motion for a new trial and extensive hearings were held. At the conclusion of these hearings the trial court overruled and denied the motion. Decision on a motion for a new trial rests largely within the sound discretion of the trial court and, in reviewing that decision, the Court of Criminal Appeals will indulge every presumption in favor of the correctness thereof. Ala.Dig., Criminal Law, 911.
We have carefully read, and reread, the five volume record in this case. We have searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is, in all things, affirmed.
AFFIRMED.
All the Judges concur except BOOKOUT, J., who concurs in the result. *Page 25