PER CURIAM.
The sole issue presented here is whether Appellant’s vehicle was located within the curtilage of a residence that was the target of a search warrant. The trial court concluded that it was because the vehicle was partially overlapping a portion of the driveway to the residence, and accordingly, denied Appellant’s motion to suppress a firearm and drugs located within the vehicle. We conclude that the vehicle was not within the curtilage of the residence, and accordingly, we reverse.
After conducting a controlled purchase of drugs, the police obtained a search warrant for the single family residence. The warrant authorized the search of any vehicle located within the residence’s “curtilage.” Appellant, who had no connection to the investigation or the residence that was the target of the search, happened to be parked in his car in front of the residence with a female companion at the time the warrant was executed. The residence was located on a city *1220 street adjacent to a paved road. It was surrounded by a chain-link fence with an opening for ingress and egress through a dirt driveway. Appellant was parked outside the chain link fence, parallel to the road within the city right-of-way very close to the paved portion of the right-of-way. Part of Appellant’s vehicle was parked over the driveway portion of the right-of-way impeding, but not blocking, ingress and egress to the property through the opening in the fence. Appellant and his companion were in the vehicle at the time of the search.
Appellant’s sole argument is that his vehicle was not within the scope of the warrant because it was not within the cur-tilage of the residence.[1] The trial court concluded that, because part of Appellant’s vehicle extended into the driveway portion of the right-of-way, the vehicle was within the curtilage. We disagree.
The term “curtilage” in the Fourth Amendment context describes the area around a home that is “intimately tied to the home itself.” United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).[2] “[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself.” Id. at 300, 107 S.Ct. 1134. Clearly, the legal boundaries of a given piece of property do not necessarily define its curtilage for Fourth Amendment purposes. To determine the scope of the curtilage to a particular residence, we must consider the four factors identified in Dunn. Wilson v. State, 952 So.2d 564, 568-69 (Fla. 5th DCA 2007). They are: “[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by.” Dunn, 480 U.S. at 301, 107 S.Ct. 1134.
Here, an analysis of the four factors leads to the inescapable conclusion that the area outside the chain link enclosure is outside the curtilage of the residence. Although the proximity factor favors the State’s argument, all of the remaining factors favor Appellant. The fact that the homeowner chose to enclose a portion of the yard with a chain-link fence is perhaps the most compelling fact here. See Dunn, 480 U.S. at 302, 107 S.Ct. 1134 (use of fence to separate area around house from other area is “significant”); [3] see also United States v. Gerard, 362 F.3d 484, 487-88 (8th Cir.2004) (presence of fence between primary resi *1221 dence and another area typically means area is outside curtilage). Similarly, the third and fourth Dunn factors support Appellant’s position. Although a small portion of the area outside the fence was used as a point of ingress and egress, it was outside the fence and within an area designated as a public right-of-way. The homeowner manifested no attempt to protect against observation by people passing by.[4]
Accordingly, we reverse the order denying the dispositive motion to suppress and remand this cause with instructions to grant the motion and vacate the judgment and sentence.
REVERSED AND REMANDED.
LAWSON and COHEN, JJ., concur.
TORPY, J., concurs specially with opinion.

. Appellant does not argue (and we do not consider) the lack of any connection between Appellant's vehicle and the suspected illegal activities or persons that were the target of the warrant.

. This is a mixed question of law and fact. We defer to the trial court regarding factual disputes, but afford no deference in applying the law to the facts. United States v. Johnson, 256 F.3d 895, 913 (9th Cir.2001); State v. Glatzmayer, 789 So.2d 297 (Fla.2001); Taylor v. State, 848 So.2d 1191 (Fla. 5th DCA 2003).

. Although not conclusive, "[Qencing configurations are important factors in defining the curtilage." Dunn, 480 U.S. at 301 n. 4, 107 S.Ct. 1134. '“[F]or most homes, the boundaries of the curtilage will be clearly marked; and the conception defining the curtilage-as the area around the home to which the activity of home life extends-is a familiar one easily understood from our daily experience.’ ”). Id. at 302, 107 S.Ct. 1134 (quoting Oliver v. United States, 466 U.S. 170, 182, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). The fact that the fence has a gap for ingress and egress does not affect our analysis. See United State v. Hatch, 931 F.2d 1478, 1481 n. 2 (11th Cir.1991) (not necessary that fence defining curtilage be complete).

. "Curtilage” cases often come up in a different context — where police have entered property without a warrant and observed criminal activity in plain view from a vantage point within the legal boundary of the property. In that context, the State typically argues that the confines of the curtilage are narrow in scope. In Wilson, for example, we concluded that the area where police were standing when they peered into a greenhouse was not within the protected curtilage of the residence, even though police crossed a fence to reach the greenhouse, which was well inside the legal boundary. Although the State urges an expansive interpretation of the word "cur-tilage” in this case, it makes no argument that the Dunn factors are inappropriate in discerning the curtilage boundary here. Surely, had a police officer been sitting in his car observing the residence from the exact place where Appellant parked his car, the State would rightfully assert that any plain view observations of the officer did not infringe upon protected space. In both contexts, the physical scope of the curtilage is and should be the same.