NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

CORNELIUS SHANNON,           )
                             )
          Appellant,         )
                             )
v.                           )        Case No. 2D16-4844
                             )
STATE OF FLORIDA,            )
                             )
          Appellee.          )
_____)

Opinion filed July 27, 2018.

Appeal from the Circuit Court for Manatee
County; Hunter W. Carroll, Judge.

Howard L. Dimmig, II, Public Defender, and
Cynthia J. Dodge, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Jeffrey H. Siegal,
Assistant Attorney General, Tampa, for
Appellee.

MORRIS, Judge.

          Cornelius Shannon appeals his drug convictions, specifically challenging

the denial of his dispositive motion to suppress.  After his motion was denied, he

entered into a negotiated plea agreement with the State, reserving his right to appeal

the denial of the motion. He also challenges his judgment and sentence on count five, claiming that he did not enter a plea to that count.[1] We agree that the trial court erred in denying his motion to suppress and accordingly reverse his convictions, thus mooting his second issue on appeal.

In a multicount information against three defendants, Shannon was charged with one count of trafficking in illegal drugs, four through fourteen grams; one count of possession of a controlled substance; one count of driving with a suspended or revoked license; and one count of possession of drug paraphernalia. Shannon filed a motion to suppress physical evidence seized during a search of his vehicle immediately prior to his arrest, arguing that his vehicle was not within the curtilage of the motel rooms that were the subject of the search warrants. He argued that the parking space did not meet the definition of curtilage set forth in United States v. Dunn, 480 U.S. 294 (1987).

At the hearing on the motion to suppress, law enforcement officers with the Manatee County Sheriff's Office testified that they had been conducting surveillance of a motel in Bradenton, specifically rooms 120, 121, and 124. On two different dates, the officers sent a confidential informant into room 121, and the informant purchased heroin on both occasions. On a third occasion, October 9, 2015, the informant purchased heroin from room 124. On that date, law enforcement observed individuals

---

[1]His judgment reflects that he pleaded no contest to trafficking in illegal drugs, four to fourteen grams (count three); possession of a controlled substance (count five); driving while license suspended or revoked (DWLSR), third or subsequent offense (count six); and possession of drug paraphernalia (count seven). He was sentenced to 108 months in prison on the trafficking count with a three-year minimum mandatory, to concurrent five-year sentences on the counts for DWLSR and possession of a controlled substance, and to time served on the paraphernalia count.

going from room 120 to room 124, and they recognized two suspected drug dealers, neither of which were Shannon. The officers did not observe Shannon during their surveillance; he was not a target of the investigation, and he was not named in the warrant. The CI had not identified Shannon as the person who sold him drugs.

Law enforcement had obtained search warrants that authorized the search of rooms 120, 121, and 124 of the motel, "its curtilage, any vehicles located within the curtilage, and any or all persons found therein, who [were] reasonably believed to be involved in the crime or crimes, for any and all controlled substances." Law enforcement executed the search warrants around 6:30 p.m. on October 9th. Members of the SWAT team arrived at the motel in an armored vehicle, and other officers arrived in their vehicles. The occupants of rooms 120, 121, and 124 were alerted that law enforcement were on their way, and the occupants began to exit the rooms and scatter. Shannon exited room 124 and traveled a few feet to his car, which was parked in the parking space in front of room 120. He carried something near his abdomen. He entered his car and tried to leave but was blocked in at the entrance by a law enforcement vehicle. He then reversed and drove around to the back of the motel, where he was again blocked in by law enforcement. Shannon exited his car with his hands up, lay on the ground, and threw his keys to the side toward the officers. After officers were informed that Shannon was observed leaving the motel room, Shannon's car was searched. In the passenger side of the car, an officer discovered a blue coffee can with a false bottom containing drugs.

The State argued that Shannon's car was parked in the curtilage of the motel rooms and that the search of his car was therefore authorized by the warrants.

The State also argued that law enforcement was permitted to search Shannon because he was leaving the location where a search warrant was being executed. The defense argued that the parking space did not meet the definition of curtilage. The trial court found that when Shannon exited room 120, it took him "about two-and-a-half, three seconds" to reach his vehicle parked in front of room 124 and that the hood of Shannon's vehicle was about three feet from the door of room 120. The trial court concluded that as a matter of law, a motel may have a curtilage and that in this case, Shannon's vehicle was in the curtilage of rooms 120, 121, and 124. The trial court found that even if the vehicle had left the curtilage, it had not left the motel and that under Michigan v. Summers, 452 U.S. 692 (1981), law enforcement was permitted to search Shannon's vehicle. The trial court denied his motion to suppress.

Shannon then entered into a plea agreement with the State, whereby he agreed to plead no contest to the charges in counts three, six, and seven in exchange for a sentence of 108 months in prison on count three with a three-year minimum mandatory term. The parties agreed, and the trial court found, that the motion to suppress was dispositive, and Shannon reserved his right to appeal the denial of the motion as part of his plea agreement.

On appeal, Shannon contends that the trial court erred in denying his motion to suppress because his vehicle was not in the curtilage of the motel rooms and therefore was not subject to search pursuant to the terms of the search warrants. He claims that the parking space in which his car was parked did not qualify as a curtilage under the definition set forth in Dunn.

We review de novo the trial court's ruling that the parking space constituted a curtilage because the issue involves a legal conclusion. See State v. K.S., 28 So. 3d 985, 987 (Fla. 2d DCA 2010) ("The trial court's 'determination of historical facts enjoys a presumption of correctness and is subject to reversal only if not supported by competent, substantial evidence in the record. However, the circuit court's determinations on mixed questions of law and fact and its legal conclusions are subject to de novo review.' " (quoting State v. Clark, 986 So. 2d 625, 628 (Fla. 2d DCA 2008))).

Prior to Dunn, the First District held that a car in the parking lot of an apartment building was on (or within) the curtilage of the apartment building for purposes of a search warrant authorizing a search of vehicles located on the curtilage. See Joyner v. State, 303 So. 2d 60, 61-63 (Fla. 1st DCA 1974) (holding that curtilage mentioned in warrant included "a semi-circular driveway which ran the length of the property adjoining the entire multi-dwelling unit"). The Joyner court held

> that yards, courtyards, driveways and parking areas usually and customarily used in common by occupants of apartment houses, condominiums and other such complexes with other occupants thereof constitute a part of the curtilage of a specifically described apartment or condominium or other living unit thereof and that an automobile located on such common areas and identified by the use of keys obtained from the occupant of such specifically described apartment, condominium or other living unit is a part of that curtilage and subject to search upon the issuance of a valid warrant authorizing a search of the living unit and curtilage thereof.[2]

Id. at 64; see also Menendez v. State, 521 So. 2d 210, 213 (Fla. 1st DCA 1988) (citing Joyner and holding that where a defendant was seen driving a car into a motel's parking

---

[2]An Alabama court noted that Florida "assumed a unique position" in regard to whether a common area of a parking lot may be considered a curtilage of an apartment. Rogers v. State, 543 So. 2d 719, 721 (Ala. Crim. App. 1988).

lot and was seen entering the motel from the car, the "car parked in the motel parking lot was within the motel room's curtilage").[3]

But in 1987, the Supreme Court set forth a more narrow definition of a curtilage:

> [C]urtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

Dunn, 480 U.S. at 301.  These factors do not "produce[] a finely tuned formula," but they "are useful analytical tools" because "they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection."  Id. "[T]he primary focus is whether the area in question harbors those intimate activities associated with domestic life and the privacies of the home."  Id. at 301 n.4.  In Dunn, the Supreme Court held that a barn did not constitute a curtilage of the defendant's home and was thus not entitled to Fourth Amendment protection.  Id. at 301-02.

After Dunn, the Florida Supreme Court addressed the inconsistent, common law definition of curtilage, concluding that Florida's burglary statute, which must be strictly construed in favor of the defendant, requires "some form of an enclosure in order for the area surrounding a residence to be considered part of the

---

[3]After the Dunn decision, this court relied on Joyner in holding that "[v]ehicles within the curtilage of a residence may be searched pursuant to a search warrant authorizing a search of that residence as well as its curtilage," but in that case, this court noted that the "highly detailed description of the residence included" parts of the curtilage in which the car was found.  State v. Ferris, 623 So. 2d 752, 754 (Fla. 2d DCA 1993).

- 6 -

'curtilage.' " State v. Hamilton, 660 So. 2d 1038, 1044-45 (Fla. 1995). In Wheeler v. State, 62 So. 3d 1218 (Fla. 5th DCA 2011), the Fifth District applied the factors in Dunn to determine whether a car was located within a residence's curtilage for purposes of a search warrant authorizing the search of any car located within the residence's curtilage.

> Appellant, who had no connection to the investigation or the residence that was the target of the search, happened to be parked in his car in front of the residence with a female companion at the time the warrant was executed. The residence was located on a city street adjacent to a paved road. It was surrounded by a chain-link fence with an opening for ingress and egress through a dirt driveway. Appellant was parked outside the chain link fence, parallel to the road within the city right-of-way very close to the paved portion of the right-of-way. Part of Appellant's vehicle was parked over the driveway portion of the right-of-way impeding, but not blocking, ingress and egress to the property through the opening in the fence. Appellant and his companion were in the vehicle at the time of the search.

Id. at 1219-20. The Fifth District considered the four factors in Dunn and concluded that "the area outside the chain link enclosure is outside the curtilage of the residence." Id. at 1220. The court noted that although the location of the car was close to the house, the car was "outside the fence and within an area designated as a public right-of-way" and "[t]he homeowner manifested no attempt to protect against observation by people passing by." Id. at 1220-21. And "[t]he fact that the homeowner chose to enclose a portion of the yard with a chain-link fence is perhaps the most compelling fact here." Id. at 1220. The court reversed the trial court's denial of the appellant's motion to suppress.

Here, the trial court concluded that Shannon's car had been parked in the curtilage of rooms 120, 121, and 124. The court found that the car was parked three

feet in front of room 120 and that when Shannon exited room 124, it took him about two-and-a-half seconds to get to his car in front of room 120. However, the proximity of the car to the rooms is only <u>one</u> factor set forth in <u>Dunn</u>. Consideration of the other <u>Dunn</u> factors leads to the conclusion that the parking space in front of 120 did not constitute the curtilage of the three motel rooms identified in the warrants. There was no indication that the parking space was enclosed, thus suggesting that it was accessible to anybody walking around the motel. There was no indication that the occupants of the rooms took any steps to protect the parking space from observation of people passing by or that the parking space was used for other purposes by the occupant of the rooms. The parking space was used by Shannon at the time in question, but there was no indication that it could not have been used by anybody else visiting the motel.

Cases from other jurisdictions support our conclusion that the parking space in this case was not within the curtilage of the three motel rooms. See <u>United States v. Duenas</u>, 691 F.3d 1070, 1081 (9th Cir. 2012) ("[The district court] correctly concluded that only the first of the four <u>Dunn</u> factors suggested that the front yard was curtilage. The front yard was not enclosed; there was no evidence as to how the yard was used; nor was there any evidence that the [residents] tried to protect the yard from observation. We therefore agree with the district court that the front yard was not curtilage . . . ."); <u>Mack v. City of Abilene</u>, 461 F.3d 547, 554 (5th Cir. 2006) (holding that parking lot of apartment complex was not curtilage of defendant's apartment where proximity of the car to the apartment was not reflected in the record but where "the parking space was in an open parking lot, the lot is a common area used for parking with multiple spaces, and a vehicle parked in the lot is not shielded from view by

others"); <u>Rogers v. State</u>, 543 So. 2d 719, 722 (Ala. Crim. App. 1988) (holding that motor home parked fifty feet away from apartment in common parking area was not in curtilage because there was no indication that "it was within an area exclusively controlled by the owner of the apartment" or that the "owner had any expectation of privacy in the motor home"); <u>Commonweath v. McCarthy</u>, 705 N.E.2d 1110, 1113 (Mass. 1999) (holding that visitor's parking space at apartment complex was not part of curtilage of defendant's apartment because it was twenty-five feet away from the side entrance of the apartment building, the space in between included "common hallways, entrances, and exits to other apartment units," the enclosure "encompass[ed] a common area utilized by all the tenants and visitors," "each space . . . is freely visible to anyone entering the lot," and the record did not show "any landscape or design features within the parking lot which would create a reasonable expectation of privacy in any individual parking space"); <u>State v. Williford</u>, 767 S.E.2d 139, 143 (N.C. Ct. App. 2015) (holding that parking lot of defendant's apartment was not "located in the curtilage of defendant's building" because even though "the parking lot was in close proximity to the building, it was not enclosed, was used for parking by both the buildings' residents and the general public, and was only protected in a limited way"); <u>Sanders v. Commonwealth</u>, 772 S.E.2d 15, 22-23 (Va. Ct. App. 2015) (holding that "the walkways immediately outside of the appellant's two different motel rooms did not qualify as curtilage" because even though "the walkways at issue were in close proximity to the rooms and provided the only apparent means of ingress and egress," "the areas at issue were not inside any sort of enclosure indicating an intent to maintain individual privacy," "nothing in the record establishes that the registered guest obtained either a

property interest in any of the areas outside the rented room or a right to exclude others from those areas," and "nothing had been done by the guests to protect the areas from people passing by the motel room doors"). After consideration of the Dunn factors and the cases cited above, we conclude that the parking space at issue was not part of the curtilage of any of the three motel rooms. It cannot be said that the parking space "harbors those intimate activities associated with domestic life and the privacies of the home." Dunn, 480 U.S. at 301 n.4. Accordingly, the officers were not justified in searching Shannon's car pursuant to the search warrants.

Shannon also argues that the officers could not search his car under the authority of Summers, which the trial court cited in its ruling. In Summers, "the dispositive question [was] whether the initial detention of [the defendant] violated his constitutional right to be secure against an unreasonable seizure of his person." 452 U.S. at 694. The defendant was leaving his residence as officers were preparing to execute a warrant to search his residence for narcotics. After the officers found narcotics in the house, they had probable cause to arrest him. During a search of his person incident to arrest, the officers found drugs. Id. at 692. The Court stated that "the validity of the search of [the defendant's] person . . . depends upon a determination whether the officers had the authority to require [the defendant] to re-enter the house and to remain there while they conducted their search." Id. at 695. The Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Id. at 705 (footnotes omitted).

The facts of this case are very different from those in Summers.  Here, there was no evidence that the officers had probable cause to arrest Shannon prior to the search at issue, and the drugs were found in his car, not on his person.  Thus, even if Summers justified the detention of Shannon during the search of the motel rooms, Summers did not give the officers authority to search his vehicle.  See Stahl v. State, 634 So. 2d 258, 259 (Fla. 2d DCA 1994) ("A warrant to search for contraband carries with it the limited authority to detain residents of the premises while the search is conducted.  If the premises search results in probable cause to arrest the resident, *then a search of the person* following arrest is permissible." (emphasis added) (citing Summers, 452 U.S. 692)).  On appeal, the State does not argue that the search of Shannon's car was valid for any other reason, and the State presented no other legal basis, with supporting evidence, to justify the search of Shannon's car.  See Hilton v. State, 961 So. 2d 284, 296 (Fla. 2007) ("When a search or seizure is conducted without a warrant, the government bears the burden of demonstrating that the search or seizure was reasonable.").  We conclude that the trial court erred in denying Shannon's motion to suppress, and we therefore reverse his judgment and sentences on this basis.

Reversed and remanded with directions for discharge.

KELLY and LUCAS, JJ., Concur.