# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-0941

_____

DARWIN DWAYNE DAVIS,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Okaloosa County.
William F. Stone, Judge.

October 31, 2018

WINOKUR, J.

Darwin Dwayne Davis was convicted of possessing a controlled substance, and now challenges the trial court's denial of his motion to suppress. We affirm.

## I.

Davis was involved in a traffic stop that included a canine sniff of his vehicle, which alerted to the presence of narcotics. The subsequent search of Davis' vehicle yielded a package of synthetic marijuana wedged between the cushions on the front seat area. Davis acknowledged ownership of the contraband to police. After his arrest, Davis filed a motion to suppress all evidence and statements stemming from the search of the vehicle, arguing that the vehicle had been within the curtilage of Davis' mobile home.

As a result, Davis maintained that the warrantless search of his vehicle was unreasonable.

During the suppression hearing, Investigator Travis Topolski of the Okaloosa County Sheriff's Office testified that he initiated the traffic stop because Davis failed to come to a complete stop when exiting a gas station. Davis eventually stopped on a dirt road on the west side of his mobile home. Topolski further testified that there was a chain-link fence around Davis' mobile home and that Davis stopped his vehicle outside of the fenced-in area. Topolski observed that there was no type of enclosure around the vehicle or roof over it. Approximately six minutes after the stop, Deputy Elliot Howard arrived with a dog, which conducted a canine sniff of the vehicle. Both Topolski and Howard testified that neither they nor the dog entered or searched any of the area within the fenced-in portion of Davis' property.

For his part, Davis testified that he objected to the search and that he did not give police permission to bring the dog onto his property. Davis also stated that he stopped his vehicle in his driveway, but agreed that it was outside of the fenced-in area of the property. Davis testified that he lived at the mobile home for approximately seventeen years and that the fence was in place before he moved into the property. Davis added that over the years he had repaired the fence and that he never tried to change its layout.

The trial court denied suppression, finding Topolski's testimony credible and concluding that Davis' vehicle was outside the curtilage of his mobile home. As a result, the trial court found that the traffic stop was lawful and the search was reasonable. Davis subsequently accepted the State's plea offer and the trial court found that Davis' suppression motion was dispositive for appellate purposes.

## II.

A trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *Connor v. State*, 803 So. 2d 598, 608 (Fla. 2001). The trial court's factual findings will

2

be upheld if there is competent, substantial evidence to support them. *State v. Young*, 974 So. 2d 601, 608 (Fla. 1st DCA 2008). However, the trial court's application of the law to those facts is reviewed *de novo. Id*. Additionally, Florida courts are bound by all United States Supreme Court decisions relating to search and seizure law. Art. I, § 12, Fla. Const.; *Johnson v. State*, 995 So. 2d 1011 (Fla. 1st DCA 2008).

A canine sniff test conducted during a lawful traffic stop does not violate the Fourth Amendment as long as the traffic stop is not "prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). In contrast, a warrantless canine sniff test on a residence or its curtilage violates the Fourth Amendment. *Florida v. Jardines*, 569 U.S. 1, 7-12 (2013).

Davis does not dispute the trial court's factual findings, but rather challenges its legal analysis. Therefore, the issue for this Court is whether Davis' vehicle was within the curtilage of his residence. If so, then the warrantless canine sniff was an unreasonable search pursuant to *Jardines*. On the other hand, if Davis' vehicle was outside the curtilage then *Caballes* controls and the canine sniff was permissible.

## III.

Curtilage is "the land or yard adjoining a house, usually within an enclosure." *Black's Law Dictionary* 466 (10th ed. 2014). The central inquiry in determining if an area constitutes curtilage is whether the area harbors the "intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Oliver v. United States*, 466 U.S. 170, 180 (1984) (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)).

*United States v. Dunn*, 480 U.S. 294 (1987), sets forth a test to determine whether an area constitutes curtilage by weighing these four factors: 1) the proximity of the area at issue to the home; 2) whether the area is within the enclosure surrounding the home; 3) the particular use of the area; and 4) the steps taken to protect the area from observation from individuals passing by. *Id*. at 301. The purpose of the test is to ascertain "whether the

3

area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id*. *See also State v. Hamilton*, 660 So. 2d 1038, 1042 (Fla. 1995); *Sarantopoulos v. State*, 629 So. 2d 121, 123 (Fla. 1993).

Davis claims that the vehicle was on the curtilage of his mobile home. However, the *Dunn* factor-test demonstrates that Davis' vehicle was outside the curtilage of the property.

First, the trial court found that the distance of the parking area to Davis' mobile home was approximately twenty feet. While the area was close to Davis' mobile home, this is the only *Dunn* factor that suggests it was part of the curtilage.

Second, the parking area was located outside of the fence surrounding his mobile home. The presence of a fence is not dispositive of the issue, but it bolsters the trial court's conclusion that the parking area was not intended to be part of the curtilage. Indeed, the *Dunn* court noted "that 'for most homes, the boundaries of the curtilage will be clearly marked; and the conception defining curtilage—as the area around the home to which the activity of home life extends—is a familiar one easily understood from our daily experience." 480 U.S. at 302 (quoting *Oliver*, 466 U.S. at 182, n.12).

Third, the record does not disclose that the parking area was used for any purpose other than parking. Finally, Davis made no effort to conceal the parking area from observation from the viewing public. On the contrary, Davis testified that he has repaired and replaced parts of the fence, but has not extended it to cover the parking area. It is reasonable to conclude that Davis had no intention to extend any sort of privacy to the parking area. As a result, we find that Davis' vehicle was not on the curtilage of his mobile home.

Davis relies on two cases for the proposition that a parking area is *per se* curtilage. *State v. Musselwhite*, 402 So. 2d 1235 (Fla. 2d DCA 1981); *Joyner v. State*, 303 So. 2d 60 (Fla. 1st DCA 1974). In *Joyner*, this Court held "that yards, courtyards, driveways and parking areas usually and customarily used in

4

common by occupants of apartment houses, condominiums and other such complexes with other occupants thereof constitute a part of the curtilage." 303 So. 2d at 64. In *Musselwhite*, the Second District relied on *Joyner* and held that "a driveway to one's residence is within the curtilage of that property." 402 So. 2d at 1237.

*Joyner* and *Musselwhite* are both distinguishable because neither case involved a parking area that was outside of a fenced area. In contrast, the Fifth District has held that a vehicle parked outside of a residence's fenced area was not on the home's curtilage. *Wheeler v. State*, 62 So. 3d 1218, 1220-21 (Fla. 5th DCA 2011). The *Wheeler* court noted that "[t]he homeowner manifested no attempt to protect against observation by people passing by." *Id.* at 1221. The same is true here.

More importantly, both *Joyner* and *Musselwhite* predate *Dunn*. As a result, neither case engaged in the requisite four-factor inquiry. The Second District has recently called into doubt this Court's holding in *Joyner*. *See Shannon v. State*, 43 Fla. L. Weekly D1704, D1705 (Fla. 2d DCA July 27, 2018) (acknowledging this Court's decision in *Joyner*, but holding that post-*Dunn* a vehicle located in a motel parking was not part of the curtilage; noting that the *Dunn* court "set forth a more narrow definition of a curtilage" than we had in *Joyner*). We agree with the Second District's analysis that *Joyner* is inconsistent with *Dunn*.

IV.

Nothing in the record indicates that Davis intended the parking area to be associated with the privacies of his home life. Therefore, the trial court's determination that the parking area was not curtilage is appropriate pursuant to *Dunn*. Since the canine sniff of Davis' vehicle did not last longer than needed to effectuate the traffic stop, it was reasonable. Accordingly, we affirm Davis' judgment and sentence.

AFFIRMED.

ROBERTS and ROWE, JJ., concur.

5

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Andy Thomas, Public Defender, and Laurel Cornell Niles, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Barbara Debelius, Assistant Attorney General, Tallahassee, for Appellee.